IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

DARREN A. BRITTO,
GABRIEL A.TAUSCHER,
and SHAWN M. KROLL,

      Plaintiffs,

   v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

      Defendant.

## COMPLAINT

Plaintiffs state their complaint against Defendant as follows:

1.    The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") has issued a rule reclassifying pistols with stabilizing braces (which are designed and intended to be attached to the user's forearm) as short-barreled rifles (which are, by contrast, designed and intended to be fired from the shoulder). ATF made this change without legal authority and despite previously and repeatedly concluding just the opposite.

2.    This regulatory about-face means that by bureaucratic fiat, ATF is forcing millions of Americans to decide among three unthinkable choices: (1) destroy, dismantle, or hand over the property they purchased with ATF's prior and affirmative

- 1 -

approval, (2) list their pistol—and by extension their own name and address—on a national gun registry, or (3) commit a felony.

3.      ATF's actions are unlawful. The new rule unlawfully usurps Congressional authority by significantly expanding the definition of "rifle" under federal law and, with it, imposes potential criminal liability on millions of Americans exercising their Second Amendment rights. Such a dramatic seizure of legislative authority violates not only the Administrative Procedures Act, but the separation of powers, as informed by the Major Questions Doctrine, *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), and the "fundamental right" to keep and bear arms, *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S.Ct. 2111, 2151 (June 23, 2022).

## PARTIES

4.      Plaintiff Darren A. Britto is a resident of Amarillo, Texas. Mr. Britto is a decorated Marine combat veteran, serving with distinction around the globe, including in Operation Desert Shield, Operation Desert Storm, Somalia, Afghanistan, and Iraq. Mr. Britto is a contributing writer for online Second Amendment-related publications. He owns a pistol with a stabilizing brace. This pistol has a barrel less than sixteen inches, thereby making it a "short barrel rifle" under the new rule. Mr. Britto uses this firearm for personal defense, competitive sport shooting, recreation with his family, and as part of his employment as a firearms instructor certified by the NRA and the State of Texas. Mr. Britto uses the stabilizing brace because it makes the firearm more accurate and therefore safer.

5.    Plaintiff Gabriel A. Tauscher is a resident of Oconomowoc, Wisconsin. Mr. Tauscher served the United States with distinction as a Marine, deploying overseas in support of the Global War on Terrorism. After his service, Mr. Tauscher served as a security contractor, protecting people and places all over the country. In 2021, Mr. Tauscher was ambushed and shot 15 times in Minneapolis. He spent 85 days in the hospital, enduring multiple surgeries and requiring 20 pints of blood. To this day, 3 of the 15 bullets remain in his body. Mr. Tauscher owns a pistol with a barrel less than 16 inches and a stabilizing brace, which he uses for personal protection and recreation. Mr. Tauscher uses the stabilizing brace because it makes the firearm more accurate and therefore safer.

6.    Plaintiff Shawn M. Kroll is a resident of Hartland, Wisconsin. He owns a pistol with a 10.5" barrel and a stabilizing brace. Mr. Kroll uses this firearm for recreational target shooting, hunting, and person defense. Mr. Kroll is a decorated Marine combat veteran, serving the United States with distinction in Afghanistan from 2009 to 2010. Mr. Kroll uses a stabilizing brace because it makes the firearm more accurate and therefore safer.

7.    Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is an agency of the United States within the Department of Justice and is responsible for enforcement of the rule upon which this action is based. ATF has multiple local offices within this District, including 500 South Taylor, Suite 300, Amarillo, TX 79101.

## JURISDICTION & VENUE

8.     This Court has federal question jurisdiction pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

9.     Venue in this District is proper pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391 because Plaintiff Britto resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

10.     This action challenges the ATF rule entitled "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'" ("the Rule") which was published in the Federal Register on January 31, 2023. 88 Fed. Reg. 6478 (Jan. 31, 2023).

11.     The Rule purports to re-classify certain pistols that have a stabilizing brace installed as short-barreled rifles subject to strict regulation under federal law.

12.     The Rule purports to interpret various terms from the National Firearms Act of 1933 ("NFA") and the Gun Control Act of 1968 ("GCA").

13.     The Rule is a final agency action under 5 U.S.C. § 704.

*General Statutory Background*

14.     The GCA regulates the firearms industry and firearms ownership in the United States in specific but limited ways, generally requiring background checks and licenses to sell a firearm as a dealer.

15.     The NFA provides stricter regulations for a particular subset of firearms, notably for purposes of this litigation, the NFA regulates rifles with barrels

that are less than 16 inches in length, and weapons made from rifles that are less than 26 inches in length. 26 U.S.C. § 5845(a)(3), (4).

16.   Under both the GCA and the NFA, a "rifle" is "a weapon designed, redesigned, made or remade, and intended to be fired from the shoulder . . ." *See* 18 U.S.C. § 921(a)(7) and 26 U.S.C. § 5845(c).

17.   Thus, a weapon designed, made and intended to be fired from the shoulder that has a barrel length of less than 16 inches is subject to the NFA, and requires anyone who wants to possess such a weapon to fully comply with the NFA's requirements.

18.   A pistol does not qualify as a rifle under either the GCA or the NFA because it is not designed, made and intended to be fired from the shoulder.

19.   Failure to follow the strict requirements of the NFA results in a fine of up to $10,000, or imprisonment of up to ten years. 26 U.S.C. § 5871.

*Stabilizing Braces*

20.   A stabilizing brace is an accessory that can be installed on a pistol. The brace attaches to the user's forearm to stabilize the pistol against the user's arm, resulting in more accurate shooting and greater comfort for the user. As alleged by Plaintiffs above, a stabilizing brace is a safety feature.

21.   A stabilizing brace typically consists of a plastic flap (or two flaps) installed on the rear of the weapon either next to the forearm or over the forearm. For increased stability, the brace can be strapped to the arm.

22.   Stabilizing braces were originally designed to help disabled shooters with accuracy, safety, and comfort, and have grown very popular amongst both disabled and non-disabled shooters throughout the United States.

23.   Pistols with stabilizing braces are not designed, made and intended to be fired from the shoulder. Therefore, attaching a brace to a pistol does not convert the pistol into a "rifle," which is designed, made and intended to be fired from the shoulder.

24.   A "stabilizing brace" attached to a user's forearm is not a "shoulder stock," which is the part of a rifle or shotgun allowing the weapon to be comfortably fired from the shoulder.

25.   Stabilizing braces are extremely popular. ATF estimates there are between three and seven million stabilizing braces in the United States, while further noting its belief that "the more accurate figure is closer to 3 million." 88 Fed. Reg. at 6550 (Jan. 31, 2023). The Congressional Research Service estimates there are between 10 and 40 million stabilizing braces in the United States.[1]

*ATF's Previous Actions on Stabilizing Braces*

26.   More than a decade ago, ATF made clear that the mere installation and use of a stabilizing brace does not bring a firearm under the purview of the NFA.

27.   In 2012, ATF first issued a classification letter[2] on a stabilizing brace clearly explaining that the stabilizing brace when attached to a weapon "does not

---

[1] "Handguns, Stabilizing Braces, and Related Components," *Congressional Research Service* (April 19, 2021), available here.
[2] Letter from ATF #2013-0172 (Nov. 26, 2012), available here.

convert that weapon to be fired from the shoulder and would not alter the classification of a pistol or other firearm."

28.     In making this finding, ATF determined that a stabilizing brace is designed and intended to be attached to a user's forearm and is therefore *not* a "shoulder stock," which is designed and intended to be fired from the shoulder. Accordingly, ATF concluded that a pistol with a stabilizing brace did not meet the statutory definition of a "rifle" under federal law.

29.     In 2015, via an "open letter" ATF affirmed that initial decision and further stated that using a stabilizing brace as a shoulder stock, instead of as a stabilizing brace attached to the user's forearm, may constitute a "redesign" of the weapon into one that is designed and intended to be fired from the shoulder, and thus could be regulated under the NFA.[3]

30.     It is unclear how ATF was able to conclude a firearm could be "redesigned" without any physical change to the item, but in any event, the 2015 letter *also* reaffirmed the agency's prior determinations: "ATF hereby confirms that if used as designed—to assist shooters in stabilizing a handgun while shooting with a single hand—the device is not considered a shoulder stock and therefore may be attached to a handgun without making a NFA firearm."[4]

---

[3] ATF Open Letter on the Redesign of "Stabilizing Braces," from Max Kingery, Acting Chief, Firearms Technology Criminal Branch, Firearms and Ammunition Technology Division, ATF (Jan. 16, 2015), available here.
[4] *Id*. at 2.

31.     ATF again re-affirmed its determination on stabilizing braces in a 2017 letter[5] noting: "With respect to stabilizing braces, ATF has concluded that attaching the brace to a handgun as a forearm brace does not 'make' a short-barreled rifle because . . . it is not intended to be and cannot comfortably be fired from the shoulder."

32.     In addition to re-affirming its determination regarding stabilizing braces, the 2017 letter went on to partly reverse the 2015 letter's position on firing such a rifle from the shoulder, stating: "incidental, sporadic, or situational 'use' of an arm-brace (in its original approved configuration) equipped firearm from a firing position at or near the shoulder" does not constitute a "redesign" such that it would be regulated by the NFA.

33.     Based upon ATF's repeated and explicit approval of stabilizing braces, millions of Americans have purchased firearms with such a stabilizing brace, or have installed a stabilizing brace on their existing firearms.

*The "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'" Rule*

34.     The Rule purports to reverse the ATF precedent on stabilizing braces going back to 2012.

35.     The Rule amends 27 CFR parts 478 and 479 to revise the definition of a "rifle" (and specifically purports to interpret the statutorily used words "designed or redesigned, made or remade, and intended to be fired from the shoulder"). The text of the updates to both regulations is identical.

---

[5] Letter for Mark Barnes, Outside Counsel to SB Tactical, LLC from Marvin G. Richardson, Assistant Director, Enforcement Programs and Services, ATF, 90000:GM, 5000 (Mar. 21, 2017), available here.

36.    Both revisions provide that the definition of a "rifle" includes any weapon that "is equipped with an accessory, component, or other rearward attachment (e.g. a 'stabilizing brace') that provides surface area that allows the weapon to be fired from the shoulder, provided other factors, as described in paragraph (2) indicate that the weapon is designed, made, and intended to be fired from the shoulder." 88 Fed. Reg. at 6574-6575 (Jan. 31, 2023) (amending 27 CFR part 478.11 and 479.11).

37.    But the "other factors" set forth in the new rule cover far more weapons than weapons designed, made and intended to be fired from the shoulder.  According to the new rule, the "other factors" to consider are: (i) the weapon's weight and length, and whether those measurements are "consistent with the weight or length of similarly designed rifles;" (ii) the weapon's "length of pull" and whether that measurement "is consistent with similarly designed rifles;" (iii) the sights on the weapon, and whether those accessories "require the weapon to be fired from the shoulder in order to be used as designed;" (iv) whether the "surface area" in question is created by something "necessary for the cycle of operations;" (v) the manufacturer's direct and indirect marketing and promotional materials indicating intended use of the weapon; and (vi) a catch-all provision that requires ATF to determine if there is any "information demonstrating the likely use of the weapon in the general community." 88 Fed. Reg. at 6574-6575 (Jan. 31, 2023) (amending 27 CFR part 478.11 and 479.11).

38.    Under these "other factors" pistols with stabilizing braces that go no farther up the arm than the shooters forearm and were neither designed nor intended to be fired from the shoulder as the statute requires, could nonetheless be said to be designed and intended to be fired from the shoulder because ATF says so. As a result, the new rule is directly inconsistent with the NFA's own statutory definition of a rifle. Further, many of the terms used in the "other factors," including "surface area" are not defined in the regulation and are vague.

39.    The terms used in the "other factors" presuppose that the weapon is a rifle (referring to the stabilizing brace as a "shoulder stock," for example).

40.    ATF intends for the Rule to be far reaching and has simultaneously issued several "FAQ" documents. These documents purport to name a wide range of commercially available firearms and common weapon platforms equipped with stabilizing braces that ATF now considers to be a "short-barreled rifles" under the Rule, which would be regulated by the NFA, even though those firearms are pistols and are not designed and intended to be fired from the shoulder.[6]

41.    The result of the rule is that anyone in possession of a pistol re-classified by ATF as a "short-barreled rifle" is immediately in violation of the NFA and faces a $10,000 penalty or up to 10 years in prison. 26 U.S.C. § 5871.

42.    ATF says it will exercise its "enforcement discretion" and give affected parties up to 120 days from the date of publication of the rule to comply with the requirements of the NFA. 88 Fed. Reg. at 6480 (Jan. 31, 2023).

---

[6] ATF, "Commercially Available Firearms Equipped With A Stabilizing Brace That Are Short-Barreled Rifles," available here.

43.     The Rule's supporting documentation lists several "options" that owners of firearms impacted by the Rule have to come into compliance: (1) remove the barrel and attach a 16-inch or longer barrel, which ATF says will remove the firearm "from the scope of the NFA"; (2) register the firearm as an NFA firearm by submitting the ATF Form 1, thereby being listed in the National Firearms Registration and Transfer Record database, the statutes require the payment of a $200 tax as well, but ATF has said they will forgo collecting those taxes as part of their "discretion"; (3) permanently remove and dispose of or "alter" the stabilizing brace so that it may not be re-installed; (4) surrender the firearm to a local ATF office; or (5) destroy the firearm. 88 Fed. Reg. at 6570 (Jan 31, 2023).

*Harms to Plaintiffs*

44.     The Rule requires Plaintiffs to comply with the NFA with respect to their pistols (and stabilizing braces), and either destroy the firearm, destroy the brace, modify the firearm so that it is a rifle (as opposed to a short-barreled rifle), or register the firearm and be listed in a national firearm database.

45.     The Rule forces Plaintiffs to either comply with ATF's demands within 120 days or risk criminal penalties, including up to 10 years in prison, all for owning a device that ATF has repeatedly and affirmatively approved going back more than a decade. Plaintiffs do not want to be listed in a national firearms database, as would be required if they registered their pistols with the ATF (one of the "options" ATF provides for compliance with the Rule), which would also mean, according to ATF, that no other person can shoot the firearm going forward.

46.     Plaintiffs do not want to modify, destroy, or surrender their pistols (which are the other "options" ATF provides for compliance with the Rule).

## CLAIM 1 – ADMINISTRATIVE PROCEDURES ACT:
## RULE CONFLICTS WITH THE STATUTE

47.     All paragraphs of this complaint are incorporated as if fully set forth herein.

48.     Pursuant to the Administrative Procedures Act, courts shall "hold unlawful and set aside agency action, findings, and conclusions" found to be in excess of "statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

49.     The GCA and the NFA, which the Rule purports to interpret, define a "rifle" as a weapon that is both designed and intended to be fired from the shoulder.

50.     It is undisputed that the design and intent of a stabilizing brace is not to fire from the shoulder, but rather to stabilize the pistol to the forearm.

51.     The Rule purports to add many additional factors to the statutory text, including: the existence of any "surface area" on the rear of the firearm, the length and weight of the rifle, accessories that may be installed on the rifle, marketing material by the manufacturer including undefined "indirect" marketing materials, and how the weapon is "likely" to be used in the community.

52.     The underlying statute requires a rifle to be designed, made and intended to be fired from the shoulder. The Rule, however, purports to regulate firearms that are not designed, made or intended to be fired from the shoulder, but that ATF believes *may be* fired from the shoulder based upon factors not included in

the statutory text. The rule conflicts with the statutory text and must be set aside. The statute plainly and unambiguously does not (and cannot) apply to a stabilizing brace, which is neither designed nor intended to be fired from the shoulder.

53.     Moreover, ATF purports to command firearm owners to "permanently remove or alter the 'stabilizing brace' so that it cannot be reattached."[7] Yet ATF has no statutory authority to regulate a stabilizing brace *after* it is detached from a firearm.

54.     The Rule amounts to a rewrite of the Congressionally enacted statute to expand its scope and give ATF additional powers.

55.     Nonetheless, should there be any ambiguity here, ATF cannot resolve that ambiguity in a way that increases criminal liability. Instead, any such ambiguity must be remedied by Congress. *See, e.g., Cargill v. Garland*, 2023 WL 119435, *1-2 (5th Cir. 2023).

56.     Through the Rule, ATF is purporting to determine whether a particular act (the use of a stabilizing brace) is subject to criminal penalties.

57.     Here, via the Rule, ATF is attempting to broadly interpret a penal law, but that is simply incorrect. The underlying statute must be interpreted *against* imposing criminal liability, not in favor of it. *See id.; see also U.S. v. Thompson/Center Arms Co.*, 504 U.S. 505, 517-518 (1992).

58.     This is especially true where, as here, an agency is attempting to criminalize activity that it has previously (and repeatedly) explicitly allowed. *See*

---

[7] FAQ at 3, available <u>here</u>.

*Cargill, infra* at *2 (explaining that it is for Congress, not an agency, to set forth the scope of criminal prohibitions, and finding it especially egregious where an agency was purporting to criminally ban activity it had previously allowed).

59. The rule plainly conflicts with the language of the statute. To the extent that the Court finds the statutory text is ambiguous, then the rule of lenity requires that any such ambiguity be interpreted against criminal liability. Insofar as the rule itself *increases* criminal liability, it would violate the rule of lenity. In either event, the rule conflicts with the statute and must be set aside.

### CLAIM 2 – VIOLATION OF THE APA:
### ARBITRARY AND CAPRICIOUS

60. All paragraphs of this complaint are incorporated as if fully set forth herein.

61. Pursuant to the Administrative Procedures Act, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

62. The Rule is arbitrary and capricious and invalid.

63. Despite explicitly and repeatedly stating, for years, that the installation of a stabilizing brace does not convert an otherwise non-NFA regulated firearm into an NFA regulated firearm, the Rule now takes the opposite position.

64. ATF attempts to describe these explicit approvals as mere "inconsistencies" (*see, e.g.,* 88 Fed. Reg. at 6507 (Jan. 31, 2023)), and attempts to minimize the reliance interests of the millions of Americans who have purchased and

installed a stabilizing brace, including Plaintiffs (*see, e.g.,* 88 Fed. Reg. at 6508 (Jan. 31, 2023)).

65.     In discussing those reliance interests, ATF failed to acknowledge their 2015 "Open Letter" which stated unambiguously: "ATF hereby confirms that if used as designed—to assist shooters in stabilizing a handgun while shooting with a single hand—the device is not considered a shoulder stock and therefore may be attached to a handgun without making a NFA firearm."

66.     ATF fails to acknowledge its clear and unambiguous policy, instead describing the 2015 letter, and the 2017 follow up as "put[ting] the public on notice that there were questions within the firearms industry and community regarding classification issues related to firearms with 'stabilizing braces.'" 88 Fed. Reg. at 6555 (Jan. 31, 2023).

67.     ATF also notes that part of their reasoning for this Rule is that two mass shootings were perpetrated with pistols equipped with stabilizing braces fired from the shoulder. 88 Fed. Reg. at 6556 (Jan. 31, 2023).

68.     Those mass shootings are horrible and despicable events. Given that ATF itself estimates there are between three and seven million stabilizing braces, and others estimate up to forty million stabilizing braces in circulation, one could hardly conclude that stabilizing braces are leading to increased crime, or that these crimes would not have occurred but for the stabilizing braces on the pistols.

69.     In any event, as alleged herein, ATF has also acknowledged that merely "shouldering" a pistol itself does not convert that pistol into a "rifle" under the statutory definition.

70.     There is no basis for overturning ATF's previous decisions finding that stabilizing braces are lawful accessories that are not regulated by the NFA because they are neither designed, made nor intended to be fired from the shoulder.

71.     The Rule relies on factors that Congress did not intend ATF to consider.

72.     The Rule runs counter to the evidence before ATF.

73.     As a result, the Rule is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and is therefore invalid under 5 U.S.C. § 706(2)(A), and must be set aside.

**CLAIM 3 – ADMINISTRATIVE PROCEDURES ACT:**
**VOID FOR VAGUENESS**

74.     All paragraphs of this complaint are incorporated as if fully set forth herein.

75.     Pursuant to the Administrative Procedures Act, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (B) contrary to [a] constitutional … power." 5 U.S.C. § 706(2)(B).

76.     The Rule is vague and violates the void for vagueness doctrine because a person cannot determine from the Final Rule whether various accessories are regulated.

77.     For example, under the Rule's "two-step" analysis, the first step is to determine whether there is an "accessory, component, or other rearward attachment

(e.g., a 'stabilizing brace') that provides surface area that allows the weapon to be fired from the shoulder . . ." 88 Fed. Reg. at 6574-6575 (Jan. 31, 2023) (amending 27 CFR §§ 478.11 and 479.11).

78.   The rule does not define "surface area" or what would "allow" a weapon to be fired from the shoulder—it mentions "stabilizing braces" as an example—but stabilizing braces are designed and intended to be attached to a forearm.

79.   The second step of the analysis is equally vague and uses undefined terms like requiring ATF to consider a manufacturers' "indirect" marketing, and "information demonstrating the likely use of the weapon in the general community."

80.   An average person has no way to know what ATF means by those terms or how they will be interpreted to determine at what point that person is subject to NFA regulations, and thus potential criminal penalties.

81.   Because the rule uses vague and undefined terms, the rule is void and should be set aside.

## CLAIM 4 – ADMINISTRATIVE PROCEDURES ACT: SEPARATION OF POWERS

82.   All paragraphs of this complaint are incorporated as if fully set forth herein.

83.   Pursuant to the Administrative Procedures Act, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (B) contrary to [a] constitutional … power." 5 U.S.C. § 706(2)(B).

84.     The U.S. Constitution provides: "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." U.S. Const., Art. I, Sec. 1.

85.     The U.S. Constitution further provides: "[The President] shall take Care that that the Laws be faithfully executed." U.S. Const., Art. II., Sec. 3.

86.     An "agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). When an agency acts, it must point to "clear congressional authorization." *West Virginia*, 142 S. Ct at 2609.

87.     In *West Virginia v. EPA*, the Supreme Court explained that it "expect[s] Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." 142 S. Ct. at 2605 (citation omitted). In such cases, "modest words, vague terms, or subtle devices" cannot confer upon the Executive Branch the power to make "a radical or fundamental change" to a statutory scheme. *Id*. at 2609 (citations omitted). The Court presumes that "Congress intends to make major policy decisions itself, not leave those decisions to agencies." *Id*. (citation omitted). In short, executive officials "must point to clear congressional authorization for the power [they] claim[ ]." *Id*. at 2634.

88.     The Rule was not enacted by Congress.

89.     The President nor any agency official may exercise Congress' power to determine what activities are forbidden by law.

90.     Congress has not prohibited the installation of a stabilizing arm brace on a pistol, nor has Congress classified such a weapon as a "rifle" under the NFA or the GCA. Such a major question—impacting millions of Americans—is for Congress to decide, especially here where the statutes do not support ATF's interpretation.

91.     The Rule amounts to a rewrite of the NFA and GCA by redefining "rifle" in a way that includes weapons Congress never intended for the statute to cover.

92.     Therefore, to the extent that the Rule purports to go beyond the text of the statute, it violates the Constitution and must be set aside.

### CLAIM 5 – ADMINISTRATIVE PROCEDURES ACT:<br>VIOLATION OF THE SECOND AMENDMENT

93.     All paragraphs of this complaint are incorporated as if fully set forth herein.

94.     Pursuant to the Administrative Procedures Act, courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . (B) contrary to [a] constitutional … right." 5 U.S.C. § 706(2)(B).

95.     The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const, Amend. II.

96.     The Second Amendment guarantees an individual right to possess firearms. *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008).

97.     ATF is required to consider whether "regulation is consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Ass'n. v. Bruen*, 142 S.Ct. 2111, 2126 (2022).

98.     ATF did not consider whether the Rule was consistent with this Nation's historical tradition of firearm regulation, instead concluding that NFA weapons "were not historically protected by the Second Amendment and thus fall outside the scope of the second amendment." 88 Fed. Reg. at 6548, fn. 145 (Jan. 31, 2023).

99.     But in doing so ATF is *assuming* that all pistols equipped with a stabilizing arm brace *are already* "short-barreled rifles" under the NFA, and thus they failed to consider whether the Rule is consistent with this Nation's historical tradition of firearm regulation—which it is not. Indeed, it is not even consistent with ATF's own tradition of firearm regulation over the past decade.

100.    By enforcing the unlawful Rule challenged herein, ATF violated Plaintiffs' Second Amendment Rights by requiring them to submit to the NFA regulatory process for possessing a lawful and commonly owned firearm accessory – namely, a stabilizing brace – which is not regulated by the NFA.

101.    Under the text and history analysis, the Rule, which purports to place common firearms like pistols on a national registry, does not satisfy strict scrutiny, and must be set aside.

### CLAIM 6 –VIOLATION OF THE NONDELEGATION DOCTRINE

102.    All paragraphs of this complaint are incorporated as if fully set forth herein.

103.    If this Court concludes that the Rule is a lawful exercise of ATF's authority, then the statutory scheme violates the nondelegation doctrine because the statute delegates the power to determine which activity constitutes a crime to ATF with no intelligible principle.

104.    The Rule is based upon authority ATF has been delegated by Congress, and purports to re-delegate that authority out to ATF staff to single handedly re-write and determine legislative standards as to what conduct constitutes criminality.

105.    To the extent that the statutory scheme allows ATF this unbridled power to rewrite federal law, the statute is unconstitutional.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Enter a temporary restraining order prohibiting ATF from enforcing the Rule;

B.    Enter a preliminary injunction prohibiting ATF from enforcing the Rule;

C.     Enter a declaratory judgment declaring that ATF does not have authority to promulgate the Rule, the Rule conflicts with the relevant statutes, the Rule is arbitrary and capricious, the Rule is void for vagueness, the Rule violates the Separation of Powers and the Second Amendment, or, in the alternative, the statutes granting ATF such unbridled power violate the Nondelegation Doctrine;

F.    Enter a permanent injunction prohibiting ATF from promulgating the Rule;

G.    Award Plaintiffs their attorney fees under 28 U.S.C. § 2412, 5 U.S.C. § 504, or other relevant laws; and

H.    Grant Plaintiffs such other and further relief as the court deems appropriate.

Dated this 31st day of January, 2023.

Respectfully Submitted,

TORMEY & McCONNELL

*s/ Ed J. McConnell*
Jeffrey W. Tormey (Bar No. 00794746)
Ed J. McConnell (Bar No. 13442500)
310 SW 6th Avenue
Amarillo, TX 79101
Telephone: (806) 414-4087
Jeff@tmcattorneys.com
Ed@tmcattorneys.com


WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

Richard M. Esenberg (*pro hac vice forthcoming*)
Daniel P. Lennington (*pro hac vice forthcoming*)
Lucas T. Vebber (*pro hac vice forthcoming*)
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org
Lucas@will-law.org