**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | |
|---|---|
| DARREN A. BRITTO, GABRIEL A. TAUSCHER, and SHAWN M. KROLL, | |
| Plaintiffs, | |
| CMMG, Inc. | |
| Plaintiff-Intervenor, | |
| v. | Case No. 2:23-cv-00019-Z |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | |
| Defendant. | |

<u>**CMMG INC.'s [PROPOSED] MEMORANDUM IN SUPPORT OF**</u>
<u>**MOTION FOR PRELIMINARY INJUNCTION**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

ARGUMENT .....................................................................................................................3

      I.     PLAINTIFF-INTERVENOR IS LIKELY TO SUCCEED ON THE MERITS. ...........................................................................................................3

          A.    The Rule Exceeds ATF's Statutory Authority. ...........................................3

              1.    The Statutes Regulate Rifles With Short Barrels And Weapons Made From Rifles, Not Pistols Equipped With Stabilizing Braces. 3

              2.    The Rule Regulates Pistols Equipped With Stabilizing Braces. ...... 5

              3.    The Rule Violates The Rule Of Lenity. ....................................... 11

          B.    The Factors Adopted By The Rule Are Otherwise Unlawful. ...................14

              1.    The Factors Are Holistically Arbitrary. ...................................... 14

              2.    The Factors Are Individually Arbitrary. ...................................... 17

              3.    The Cost-Benefit Analysis Is Arbitrary. ...................................... 20

          C.    The Adjudications Are Unlawful And Confirm The Rule Is Arbitrary. ...............................................................................................22

              1.    ATF Cannot Simultaneously Issue Adjudications On Specific Firearms Contemporaneously With The Rule. ............................ 22

              2.    The Adjudications Are Contrary To Law. ................................... 22

              3.    The Adjudications Confirm That The Rule Is Arbitrary. ............. 23

      II.    PLAINTIFF-INTERVENOR WILL BE IRREPARABLY HARMED ABSENT AN INJUNCTION. ...............................................................24

      III.   THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR GRANTING AN INJUNCTION. ...............................................................25

CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Petroleum Inst. v. OSHA*,
  581 F.2d 493 (5th Cir. 1978) .................................................................21

*ANR Storage Co. v. FERC*,
  904 F.3d 1020 (D.C. 2018) ...................................................................20

*Ass'n of Nat'l Advertisers, Inc. v. FTC*,
  627 F.2d 1151 (D.C. Cir. 1979) ............................................................22

*Avitabile v. Beach*,
  368 F. Supp. 3d 404 (N.D.N.Y. 2019) ..................................................14

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) ...........................................................................5

*BST Holdings, LLC v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) .................................................................25

*Cargill v. Garland*,
  57 F.4th 447 (5th Cir. 2023) ...............................................1, 12, 13, 14

*Chamber of Com. v. SEC*,
  412 F.3d 133 (D.C. Cir. 2005) ..............................................................21

*Citizens Telecomms. Co. of Minn. v. FCC*,
  901 F.3d 992 (8th Cir. 2018) ................................................................21

*City of Dallas v. Delta Air Lines, Inc.*,
  847 F.3d 279 (5th Cir. 2017) ............................................................3, 25

*Data Mktg. P'ship, LP v. United States Dep't of Lab.*,
  45 F.4th 846 (5th Cir. 2022) .................................................................24

*Dep't of Com. v. New York*,
  139 S. Ct. 2551 (2019) ..........................................................................23

*DHS v. Regents of the Univ. of Cal.*,
  140 S. Ct. 1891 (2020) .....................................................................21, 23

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..............................................................................14

*Doe v. Texas Christian Univ.*,
    601 F. Supp. 3d 78 (N.D. Tex. 2022) ...................................................................25

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016).........................................................................................23

*Forsyth Mem'l Hosp., Inc. v. Sebelius*,
    652 F.3d 42 (D.C. Cir. 2011)...........................................................................22

*Garcia-Carias v. Holder*,
    697 F.3d 257 (5th Cir. 2012) ...........................................................................23

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
    140 S. Ct. 1637 (2020).......................................................................................4

*Guedes v. ATF*,
    140 S. Ct. 789 (2020)......................................................................................13

*Gundy v. United States*,
    139 S. Ct. 2116 (2019)..........................................................................5, 9, 11

*Innovator Enters., Inc. v. Jones*,
    28 F. Supp. 3d 14 (D.D.C. 2014)...............................................................16, 19

*LeMoyne-Owen Coll. v. NLRB*,
    357 F.3d 55 (D.C. Cir. 2004)...........................................................................15

*Lomont v. O'Neill*,
    285 F.3d 9 (D.C. Cir. 2002) ..............................................................................3

*Michigan v. EPA*,
    576 U.S. 743 (2015)........................................................................................20

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..........................................................................................14

*Nat'l Pork Producers Council v. EPA*,
    635 F.3d 738 (5th Cir. 2011) .............................................................................7

*New York State Rifle & Pistol Ass'n v. Bruen*,
    142 S. Ct. 2111 (2022).....................................................................................14

*Nken v. Holder*,
    556 U.S. 418 (2009)........................................................................................25

*Owner-Operator Indep. Drivers Ass'n v. FMCSA*,
    494 F.3d 188 (D.C. Cir. 2007)........................................................................20

*Posters 'N' Things, Ltd. v. United States*,
    511 U.S. 513 (1994) ........................................................................................8

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) ........................................................................................6

*Record Head Corp. v. Sachen*,
    682 F.2d 672 (7th Cir. 1982) ......................................................................9, 15

*Sekhar v. United States*,
    570 U.S. 729 (2013) ......................................................................................13

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
    121 S. Ct. 675 (2001) ....................................................................................14

*Texas v. Biden*,
    No. 2:21-CV-067-Z, 2022 WL 17718634 (N.D. Tex. Dec. 15, 2022)
    (Kacsmaryk, J.) ............................................................................................14

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ........................................................................24

*Texas v. United States*,
    809 F.3d at 187 ............................................................................................25

*Tobacco Accessories & Novelty Craftsmen Merchs. Ass'n of La. v. Treen*,
    681 F.2d 378 (5th Cir. 1982) ..........................................................................9

*Tripoli Rocketry Ass'n v. ATF*,
    437 F.3d 75 (D.C. Cir. 2006) ..........................................................17, 18, 19

*United States Postal Serv. v. Postal Regul. Comm'n*,
    785 F.3d 740 (D.C. Cir. 2015) ......................................................................15

*United States v. Amos*,
    501 F.3d 524 (6th Cir. 2007) ........................................................................11

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ..........................................................4, 10, 11

*United States v. Fix*,
    4 F. App'x 324 (9th Cir. 2001) ......................................................................6

*United States v. Kwan*,
    300 F. App'x 485 (9th Cir. 2008) ..................................................................8

*United States v. Lim*,
    444 F.3d 910 (7th Cir. 2006) ........................................................................18

*United States v. Marzzarella*,
    614 F.3d 85 (3rd Cir. 2010) ....................................................................4, 10

*United States v. Mead Corp.*,
    533 U.S. 218 (2001)....................................................................................15

*United States v. One (1) Colt AR-15 Firearm Serial No. TA03524*,
    349 F. Supp. 2d 1064 (W.D. Tenn. 2004)..................................................6

*United States v. Thompson/Ctr.*,
    504 U.S. 505 (1992)..................................................................................3, 8

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)......................................................................................8

*Wages & White Lion Invs., L.L.C. v. FDA*,
    16 F.4th 1130 (5th Cir. 2021) ...............................................................24, 25

**Statutes**

5 U.S.C. § 551....................................................................................................22

18 U.S.C. § 926..................................................................................................20

26 U.S.C. § 5842..................................................................................................7

26 U.S.C. § 5845...................................................................................... *passim*

26 U.S.C. § 7805................................................................................................20

**Legislative Materials**

H.R. 9066, 73d Cong., 2d Sess. (1934)...............................................................4

H.R. Rep. No. 73-1780 (1934)..........................................................................4, 5

William J. Krouse, *Handguns, Stabilizing Braces, and Related Components*,
    Cong. Rsch. Serv., https://crsreports.congress.gov/product/pdf/IF/IF11763
    (updated Apr. 19, 2021) ............................................................................10

**Executive Materials**

ATF, *Firearm Types Recovered and Traced in the United States and Territories*
    (Sept. 16, 2022), *available at* https://www.atf.gov/resource-center/firearms-
    trace-data-2021# ......................................................................................10

Factoring Criteria for Firearms With Attached "Stabilizing Braces," 88 Fed. Reg.
    6,478 (Jan. 31, 2023)............................................................................ *passim*

Factoring Criteria for Firearms With Attached "Stabilizing Braces," 86 Fed. Reg. 30,826 (June 10, 2021).............................................................................................2, 13, 22, 23

President's Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298 (Apr. 8, 2021) .........................................................................................7, 11, 16

**Other Authorities**

David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585 (1986)..........................................................................3, 4

## INTRODUCTION

For more than a decade, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") authorized the public to use pistol stabilizing braces, a popular firearms accessory, without federal regulation.  During that time, ATF repeatedly issued letter rulings assuring manufacturers and the public that attaching a stabilizing brace would not alter the classification of a pistol or other firearm.  As a result, millions of Americans have for years lawfully purchased stabilizing braces and pistols equipped with stabilizing braces from authorized, legitimate manufacturers with ATF's full knowledge and express approval.

Then everything changed.  On January 31, 2023, ATF promulgated the Rule at issue here, which purports to provide "factoring criteria" to "clarify" how ATF will decide whether any particular gun is subject to heightened regulation.  Factoring Criteria for Firearms With Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule").  In actuality, it vests ATF with unbounded discretion.  And incredibly, ATF now claims that this result was required all along.

But a plain reading of the statutory language, paired with an understanding of Congress's purposes in enacting it, reveals that a pistol or other firearm equipped with a stabilizing brace is excluded from the applicable definitions set forth in the NFA (as well as the Gun Control Act, or "GCA").  And if the Court disagrees, then the NFA is at least grievously ambiguous.  That is, if the agency charged with administering the NFA believed *for years* that brace-equipped pistols are not subject to NFA controls and now holds the opposite, application of the statute to such braces must at a minimum be grievously ambiguous in violation of the rule of lenity.  *See Cargill v. Garland*, 57 F.4th 447, 469–71 (5th Cir. 2023) (applying rule of lenity to prevent NFA and GCA regulation of bump stocks).

Finally, the Rule and the accompanying adjudications are arbitrary and capricious on multiple counts.  This Court should set aside ATF's unlawful Rule and adjudications.

## BACKGROUND

On June 10, 2021, ATF issued a Notice of Proposed Rulemaking which attempted to reconcile ATF's decade-long position that brace-equipped pistols did not fall within the NFA or GCA with its new position that brace-affixed pistols are covered by the statutes, by "assign[ing] point values" to "characteristics or features" that it considered probative of intent to shoulder. *See* Factoring Criteria for Firearms With Attached "Stabilizing Braces," 86 Fed. Reg. 30,826, 30,829 (June 10, 2021) ("Notice").

On January 31, 2023, ATF released the Rule, which is effective immediately. ATF abandoned its points system and invalidated all its prior stabilizing brace classifications, adopting in their place a multi-factor test that purports to identify shoulder-fired weapons. Rule, 88 Fed. Reg. at 6,480, 6,574–75 (to be codified at 27 C.F.R. § 478.11 and 27 C.F.R. § 479.11). Although this test is nominally "dependent on the specific configuration of the firearm," *id.* at 6,507, the new definition purports to encompass ***99%*** of all stabilizing braces, Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis, at 21 (Jan. 2023) ("Regulatory Analysis"), Compl. Ex. B. Thus, in ATF's view, millions of Americans have been committing felonies for years. Indeed, ATF claims that these items were ***always*** and unambiguously unlawful. *See* Rule, Fed. Reg. at 6,478. This even though ATF has read the statutes differently for more than a decade.

In addition to the Rule, ATF simultaneously issued dozens of adjudications classifying common weapon platforms equipped with braces and commercially available firearms equipped with braces ("the Adjudications"), specifically including one of CMMG's products by name. *See* ATF, Common Weapon Platforms With Attached 'Stabilizing Brace' Designs that are Short-Barreled Rifles ("Platforms Adjudication"), Compl. Ex. C; ATF, Commercially Available Firearms Equipped with a 'Stabilizing Brace' that are Short-Barreled Rifles ("Firearms Adjudication"), Compl. Ex. D. The Adjudications contain no analysis. Each provides only a

photograph of a common weapon platform or firearm and labels it a "short-barreled rifle." The Adjudications cover the most popular stabilizing braces in the United States.

## ARGUMENT

To obtain a preliminary injunction, Plaintiff-Intervenor must establish: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the threatened harm to the party sought to be enjoined; and (4) granting the injunctive relief will not disserve the public interest." *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017). Here, all four factors favor an injunction.

## I.    PLAINTIFF-INTERVENOR IS LIKELY TO SUCCEED ON THE MERITS.

### A.    The Rule Exceeds ATF's Statutory Authority.

#### 1.    The Statutes Regulate Rifles With Short Barrels And Weapons Made From Rifles, Not Pistols Equipped With Stabilizing Braces.

Congress enacted the NFA to regulate "weapons likely to be used for criminal purposes." *United States v. Thompson/Ctr.*, 504 U.S. 505, 517 (1992). Confronted with the emergence of professional "gangsters" in the late 1920s and early 1930s favoring sawed-off weapons for close-quarters combat, Congress determined to regulate these weapons more stringently than other guns. *See Lomont v. O'Neill*, 285 F.3d 9, 11 (D.C. Cir. 2002); David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 590–92 (1986).

The NFA comprehends short rifles in two ways. First, the text encompasses "a rifle having a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(3). Second, it covers "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(4). Taken together, these provisions bring within the NFA "rifles" manufactured with short barrels and "rifles" manufactured with long barrels that are subsequently cut down.

3

Contrary to the approach taken in the Rule, the NFA does not purport to regulate a pistol equipped with a stabilizing brace. This limitation is clear from the text itself, which says nothing about regulating pistols, accessories, or stabilizing braces. *See GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) ("a matter not covered is to be treated as not covered").

In addition to the text, legislative history confirms this statutory limitation. As initially drafted, the NFA would have regulated "a pistol, revolver, shotgun having a barrel less than sixteen inches in length, or any other firearm capable of being concealed on the person, a muffler or silencer therefor, or a machine gun." H.R. 9066, 73d Cong., 2d Sess. (1934). "During committee consideration," however, "pistols and revolvers were omitted, so that the bill applied to machineguns, sawed-off shotguns and rifles, silencers, and concealable firearms *other than* pistols and revolvers." Hardy, *supra*, 17 Cumb. L. Rev. at 592–93. These omissions were retained in the enacted text, reflecting Congress's judgment that "there is justification for permitting the citizen to keep a pistol or revolver for his own protection without any restriction." H.R. Rep. No. 73-1780. Today, the statute still excludes a rifled "pistol" or "revolver." 26 U.S.C. § 5845(e), (a)(5).

That the NFA does not regulate pistols is also evidenced by Congress's purpose. Congress believed that "a long gun with a shortened barrel is both dangerous, because its concealability fosters its use in illicit activity, and unusual, because of its heightened capability to cause damage." *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) (cleaned up); *accord United States v. Marzzarella*, 614 F.3d 85, 95 (3rd Cir. 2010). But Congress determined that these dangers were not present with "pistols and revolvers and sporting arms," and found that "limiting the [NFA] to the taxing of sawed-off guns and machine guns" was sufficient to deprive the "[t]he gangster . . . of his most dangerous weapon[s]." H.R. Rep. No. 73-1780. Decades later, the GCA followed the

4

NFA and subjected "short-barreled rifles" (but not "handguns") to heightened regulations.

### 2.   The Rule Regulates Pistols Equipped With Stabilizing Braces.

The Rule achieves a more expansive result because it "abandon[s] the statutory text." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1749 (2020). By overlooking the principal statutory definitions and focusing instead on the subordinate definitions of "rifle," the Rule exceeds the limits Congress imposed. The Rule also misinterprets the term "rifle," by failing to consider the "text in context, along with purpose and history." *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019) (plurality). As a result, the Rule unlawfully subjects braced pistols to heightened regulatory obligations and, by doing so, disfavors firearms Congress determined were safer and less likely to be used for criminal purposes.

#### a.   *The Rule Overlooks The Principal Statutory Definitions.*

As explained, the NFA regulates "a rifle having a barrel or barrels of less than 16 inches in length" and "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(3), (a)(4); *accord* 18 U.S.C. § 921(a)(8) (GCA). The Rule never addresses these principal provisions, choosing instead to elaborate only the subordinate definition of a "rifle."

The problem with this approach is that it stretches NFA jurisdiction beyond what the operative provisions will allow. Section 5845(a)(4) addresses the specific evil that compelled Congress to enact the NFA—that is, "gangster[s]" using "sawed-off guns" to commit violent crimes. H.R. Rep. No. 73-1780. By addressing weapons "made from a rifle," section 5845(a)(4) effectively regulates a weapon that is manufactured as a rifle and then subsequently shortened.

But this provision has an obvious shortcoming. By covering weapons "made from a rifle"—that is, weapons manufactured as rifles and subsequently shortened—section 5845(a)(4) does not reach weapons that are manufactured as short-barreled rifles. Section 5845(i) makes this

implication express, defining "make" to exclude "manufacturing . . . by one qualified to engage in such business under this chapter."  26 U.S.C. § 5845(i).  Thus, if the NFA contained only section 5845(a)(4), criminals would be required to register and pay tax on sawed-off rifles but would not be required to do so for rifles with short barrels produced that way by qualified manufacturers.

Section 5845(a)(3) plugs this gap.  By addressing "a rifle having a barrel or barrels of less than 16 inches in length," section 5845(a)(3) effectively reaches a weapon that is produced by an NFA qualified manufacturer as a rifle with a short barrel.  *See, e.g.*, *United States v. One (1) Colt AR-15 Firearm Serial No. TA03524*, 349 F. Supp. 2d 1064, 1066 (W.D. Tenn. 2004) (holding "original equipment configuration" Colt model AR-15 satisfies 5845(a)(3)).  Section 5845(a)(3) thus prevents a criminal from circumventing section 5845(a)(4)'s registration and tax requirements by purchasing a mass-produced short-barreled rifle instead of making one himself.  Or put differently, while the NFA covers short-barreled weapons "*made from*" a rifle, it nowhere covers pistols that in ATF's estimation are *made into* a regulated short-barreled firearm by the addition of accessories such as braces.  *See also United States v. Fix*, 4 F. App'x 324, 326 (9th Cir. 2001) (holding modified "pistol" not an NFA firearm because proper classification "does not consider modifications of the weapon by the owner").

The Rule ignores this statutory scheme.  Under the Rule, a weapon that is deemed a "rifle" and has a barrel under 16 inches is assumed to satisfy either section 5845(a)(3) or (a)(4) without regard to how it was made.  *See, e.g.*, Rule, 88 Fed. Reg. at 6,479, 6,501.  By thus abstracting away from the statutory text, the Rule transcends the limitations Congress imposed.

But the text matters.  In conflating sections 5845(a)(3) and (a)(4), the Rule "violat[es] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (citation omitted).  Put

differently, if the Rule were correct that any potentially shoulderable short-barreled weapon is subject to NFA regulation, then there would have been no need for Congress to enact separate provisions to encompass sawed-off rifles and rifles produced by a qualified manufacturer.[1]

ATF's strained reading is also inconsistent with the statutory structure.  If lengthening a pistol with a stabilizing brace created a short-barreled rifle, then every time a consumer temporarily attached a stabilizing brace to a pistol, he would have to permanently engrave the braced gun with identifying information.  *See* 26 U.S.C. § 5842(a).  Then, when the consumer detached the brace, he would be entitled to remove this information, but, by law, the information "may not be readily removed."  *Ibid.*  This absurd result "contravenes the regulatory scheme enacted by Congress." *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 753 (5th Cir. 2011) (citation omitted).

ATF overlooked the statutory distinctions because it was focused on the Administration's political objective—that is, to "treat pistols modified with stabilizing braces" as "subject to the National Firearms Act," President's Remarks on Gun Violence Prevention Efforts, 2021 Daily Comp. Pres. Doc. 298, at 3 (Apr. 8, 2021)—and not on the text that Congress enacted.

> b.     *The Rule Misinterprets "Designed" And "Intended."*

The Rule also misinterprets the statutory definitions of "rifle."  NFA section 5845(c) and GCA section 921(a)(7) each provide that a "rifle" is "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder."  26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). The Rule commits fundamental errors in interpreting "designed" and "intended."

First, ATF misinterprets "designed."   Specifically, ATF excludes from its future

---

[1] These NFA distinctions are reinforced by the GCA, which similarly defines a "short-barreled rifle" as "a rifle having one or more barrels less than sixteen inches in length" and as "any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches."  18 U.S.C. § 921(a)(8).

classification decisions all evidence showing that a stabilizing brace functions as such because, in the agency's view, "[t]he fact that the 'stabilizing brace' makes firing a standard pistol more accurate or more enjoyable is ***irrelevant***." Rule, 88 Fed. Reg. at 6,557 (emphasis added).

ATF is wrong. In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), the Supreme Court interpreted a statute prohibiting sale of items "designed . . . for use with illegal cannabis or drugs." *Id.* at 492. The Court found it "plain" and "clear" that "designed" includes "an item that is principally used with illegal drugs" but not "items which are principally used for nondrug purposes." *Id.* at 501. Thus, the statute would cover a pipe "typically used to smoke marihuana" but not "ordinary pipes"; a "roach clip" but not "paper clips sold next to *Rolling Stone* magazine." *Id.* at 494, 501–02; *see also Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994) (where "items may be used for legitimate as well as illegitimate purposes . . . a certain degree of ambiguity necessarily surrounds their classification") (citations and quotations omitted); *United States v. Kwan*, 300 F. App'x 485, 486 (9th Cir. 2008) ("an aggregation of weapons parts may not constitute a firearm if the parts have an apparent legal purpose other than the creation of such a firearm"). Under *Hoffman Estates*, ATF cannot read the term "designed" to exclude all evidence showing that a stabilizing brace is suitable for use as a brace.

Indeed, if an item is designed for a non-shouldering function, ATF is ***prohibited*** from regulating it. In *Thompson/Center*, the Supreme Court held that a party did not "make" an NFA firearm by packaging components that could "be converted not only into a short-barreled rifle, which is a regulated firearm, but also into a long-barreled rifle, which is not." *Thompson/Ctr.*, 504 U.S. at 513. Because the "aggregation of parts" could serve a "useful purpose" other than "the assembly of a firearm," lenity required the Court to find that packaging those components did not "make" "a short-barreled rifle for purposes of the NFA." *Id.* at 513–18; *see also Kwan*, 300 F.

8

App'x at 486.  Here, as in that case, affixing a brace to a pistol does not "design" a short-barreled rifle so long as the brace serves a "useful purpose" other than shouldering.

ATF also misinterprets "intended."  Under the Rule, future ATF classifications will determine a manufacturer's intent based upon "marketing materials" produced by third parties, as well as other third-party "information demonstrating the likely use of the weapon by the general community."  Rule, 88 Fed. Reg. at 6,544.  That interpretation violates the statute because third-party intent is irrelevant to a ***manufacturer's*** intent.  In *Record Head Corp. v. Sachen*, 682 F.2d 672 (7th Cir. 1982), the Seventh Circuit interpreted a drug paraphernalia ordinance that, like the Rule, enumerated factors that supposedly would enable law enforcement to determine whether items for sale were "designed" and "intended" for unlawful use.  *Id.* at 677.  Invalidating the ordinance as unconstitutionally vague, the Seventh Circuit explained that factors requiring law enforcement to examine third-party "advertising" and "opinion" had no "conceivable relevance to the intent of the seller" and thus compounded the constitutional problem.  *Ibid.*; *see also, e.g.*, *Tobacco Accessories & Novelty Craftsmen Merchs. Ass'n of La. v. Treen*, 681 F.2d 378, 385 (5th Cir. 1982) ("We are persuaded that the 'designed for use' language of the Louisiana Act similarly applies only to manufacturers, for their own acts of design.").

ATF commits the same error.  Under the Rule, ATF would attribute third-party intent to firearms manufacturers, stabilizing brace manufacturers, commercial retailers, and even to individual gun owners.  The Rule's interpretation of "intended" violates the NFA and GCA.

      c.     *The Rule Undermines The Statutes' Purpose.*

The "history and purpose" of the NFA confirm that ATF has exceeded the bounds of the statute.  *Gundy*, 139 S. Ct. at 2126 (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)) (brackets omitted).  As explained, Congress enacted the NFA to address the specific problem of criminals

sawing down long guns to make them more useful in committing violent crimes.  And the GCA embraced that reasoning by adopting substantially similar language, subjecting shortened long guns (but not handguns) to its heightened regulations.

The Rule does the opposite.  It is expressly designed to subject braced pistols to burdensome NFA and GCA regulations even though the record confirms that pistols equipped with stabilizing braces are less likely than a pistol alone to be used in the commission of a crime, more difficult to conceal than an unequipped pistol (rendering them less effective for criminal purposes), and generally safer than an unequipped pistol.

There are millions of stabilizing braces in circulation.  *See* Rule, 88 Fed. Reg. at 6,560 (estimating "3 million"); William J. Krouse, Cong. Res. Serv., *Handguns, Stabilizing Braces, and Related Components* (Apr. 19, 2021), https://crsreports.congress.gov/product/pdf/IF/IF11763 (estimating "between 10 and 40 million").  ATF reports that only "63 firearms with 'stabilizing braces' have been traced in criminal investigations."  Rule, 88 Fed. Reg. at 6,499.  This figure pales in comparison to the more than 376,690 **handguns**—i.e., pistols without braces—ATF traced **in 2021 alone**.  ATF, *Firearm Types Recovered and Traced in the United States and Territories* (Sept. 16, 2022), *available at* https://www.atf.gov/resource-center/firearms-trace-data-2021#.

Common sense explains why.  As Congress found and "many courts have explained," *Cox*, 906 F.3d at 1185, shortening a long gun "fosters its use in illicit activity" because the shortened gun is more easily "concealed," *Marzzarella*, 614 F.3d at 95.  But that is not true when a brace is attached to a pistol because a braced pistol is more difficult to conceal.  Unlike a sawed-off rifle—which, Congress found, becomes *more* suitable for committing crimes than an unmodified rifle—a braced pistol becomes *less* suitable for committing crimes than an unbraced pistol.

ATF agrees that the NFA and GCA strictly regulate short-barreled rifles because they are

more easily concealed than long-barreled rifles. Rule, 88 Fed. Reg. at 6,495, 6,498–99. Nevertheless, the Rule acknowledges that its purpose is to compel millions of law-abiding citizens to "[p]ermanently remove and dispose of, or alter, the 'stabilizing brace[s]'" attached to their pistols. *Id.* at 6,570. This action will not make the pistol any more or less powerful. It will, however, make the firearm easier to conceal and thus, according to Congress, more suitable for committing a crime. The Rule is thus contrary to a principal objective of the NFA and GCA.

In addition to being more difficult to conceal, a braced pistol is more accurate—as ATF concedes, Rule, 88 Fed. Reg. at 6,557; *see also* President's Remarks on Gun Violence Prevention Efforts at 3 ("pistols modified with stabilizing braces" are "a hell of a lot more accurate")—and thus less dangerous than an unbraced pistol. Congress believed that shortened long guns possess a "somewhat indiscriminate accuracy" that makes them "useful for only violence against another person, rather than, for example, against sport game." *United States v. Amos*, 501 F.3d 524, 531 (6th Cir. 2007) (McKeague, J., dissenting); *see Cox*, 906 F.3d at 1185 (explaining Congress believed "a long gun with a shortened barrel is . . . unusual, 'because of its heightened capability to cause damage'" (quoting *Marzzarella*, 614 F.3d at 95)).

In short, the statutes were designed and intended to penalize access to more easily concealable and less accurate rifles. The objective of the Rule is precisely the opposite. By subjecting braced pistols to NFA jurisdiction and heightened GCA regulations, manufacturers and law-abiding citizens will become hesitant to use these braces, even though they make pistols safer and less likely to be used in crime. The result will necessarily be an increase in the number of concealable and more dangerous weapons, contradicting the statute's "history and purpose." *Gundy*, 139 S. Ct. at 2126 (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013)) (brackets omitted).

3. The Rule Violates The Rule Of Lenity.

At a minimum, the rule of lenity requires that the Rule be set aside. As the en banc Fifth

11

Circuit recently confirmed, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cargill*, 57 F.4th at 469 (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)).

In this case, the statute's text, history, and purpose all point in the same direction. The NFA and GCA cover rifles produced with short barrels and rifles produced with long barrels that are later cut down, not pistols that are equipped with stabilizing braces. *See* sections I.A.1.–I.A.2., *supra*. For that reason, the Court should hold that the NFA and GCA unambiguously exclude from heightened regulation pistols that are equipped with stabilizing braces.

If the Court disagrees, then the statutes are at least grievously ambiguous. The Rule's preamble explains why. When ATF first considered the stabilizing braces at issue here, it understood that their attachment to a pistol "would not alter the classification of a pistol or other firearm" and that "such a firearm *would not be* subject to NFA controls." Rule, 88 Fed. Reg. at 6,479 (quoting Letter from ATF #2013-0172 (Nov. 26, 2012) (emphasis in original letter). Furthermore, ATF recognized that a stabilizing brace differs from a stock because a "'brace,' when attached to a firearm, d[oes] 'not convert that weapon to be fired from the shoulder.'" *Ibid.*

ATF maintained this position for over a decade, issuing many interpretation letters stating its position. *Id.* at 6,502 n.84; *see also* Senate Letter at 2, Compl. Ex. O (explaining ATF's "repeated letter rulings approving stabilizing braces, created a thriving market for these stabilizing braces"). The Department also asserted this position in criminal prosecutions, telling courts that "the type of device placed on the firearm is also dispositive of what type of firearm, whether it's a rifle or whether it is a pistol and so the ATF letters do correctly state that they consider a firearm with a pistol brace to not be a rifle under the NFA for purposes of the NFA." Kamali Transcript at 38:9–15, Compl. Ex. M. And even the Notice took a similar approach, attempting to reconcile

these past decisions through a proposed points system.  Notice, 86 Fed. Reg. at 30,829–32.

Then, between June 2021—when the Notice was issued—and a few weeks ago, ATF reversed course.  Apparently "realizing" for the first time that pistols with stabilizing braces have always and unambiguously been covered by the NFA, ATF decided to effectively render all brace-equipped pistols short-barreled rifles.  That "sounds absurd, because it is." *Sekhar v. United States*, 570 U.S. 729, 738 (2013).  For ATF to fundamentally change its longstanding position demonstrates at the very least that the NFA is ambiguous with respect to whether it covers brace-equipped pistols and that the rule of lenity should apply.

The en banc Fifth Circuit's *Cargill* decision shows why lenity requires the Rule to be set aside.  In that case, the court considered an ATF rulemaking that purported to reinterpret the federal prohibition on machineguns to extend to bump stocks.  The lead opinion found that a bump stock is not a machinegun under "the statute's unambiguous language."  *Cargill*, 57 F.4th at 464. Turning to the rule of lenity, thirteen of the sixteen judges on the Fifth Circuit then held, assuming a "grievous" ambiguity standard, that even if the statute "does not unambiguously exclude non-mechanical bump stocks, its inclusion of [non-mechanical bump stocks] is at the very least ambiguous." *Id.* at 470; *see id.* at 469 ("the Government has construed the same statute in two, inconsistent ways at different points in time").  Because the rule was at least ambiguous, "the rule of lenity demand[ed]" that it be set aside.  *Id.* at 471.

The same is true here.  Just like *Cargill*, ATF is reversing its long-held position with respect to a particular firearms accessory.  "The law hasn't changed, only [the] agency's interpretation of it." *Guedes v. ATF*, 140 S. Ct. 789, 790 (2020) (statement of Gorsuch, J.).  And here, just like *Cargill*, the impact of ATF's sudden reversal is to subject to criminal penalties any individuals who continue to obey ATF's previous rulings.  If the agency charged with administering the NFA

13

believed *for years* that pistols equipped with stabilizing braces are not subject to NFA or GCA controls, the application of the statute to such braces must at a minimum be grievously ambiguous. Lenity thus demands that the Rule be set aside.

Principles of constitutional avoidance lead to the same result. Stabilizing braces are undoubtedly in "common use," *see New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2128, 2143 (2022), as ATF's own data indicate, Rule, 88 Fed. Reg. at 6,560; *see also, e.g.*, *Avitabile v. Beach*, 368 F. Supp. 3d 404, 411 (N.D.N.Y. 2019) (concluding that "at least 300,000 tasers and 4,478,330 stun guns owned by private citizens across the United States" constituted "common use"). Placing onerous restrictions on the possession, use, or carrying of stabilizing braces would therefore implicate core Second Amendment protections in a way that the NFA's plain text—which regulates only "dangerous and unusual weapons," *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)—does not. And constitutional avoidance defeats even *Chevron* deference. *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 121 S. Ct. 675, 684 (2001). ATF's interpretation of the NFA implicates significant constitutional questions and should therefore be rejected. *Ibid.*

## B. The Factors Adopted By The Rule Are Otherwise Unlawful.

Even if the Rule did not violate the unambiguous language of the statute or the rule of lenity, it should still be struck down. Because the NFA and GCA are criminal statutes, ATF's interpretations are entitled to no deference. *Cargill*, 57 F.4th at 466–68. But regardless of deference, the Rule is arbitrary and capricious for multiple reasons. *See Texas v. Biden*, No. 2:21-CV-067-Z, 2022 WL 17718634, at *10 (N.D. Tex. Dec. 15, 2022) (Kacsmaryk, J.); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### 1.   The Factors Are Holistically Arbitrary.

ATF's factors are arbitrary and capricious when considered holistically. The Rule first

requires ATF to determine whether a weapon "provides surface area" for shouldering.  Rule, 88 Fed. Reg. at 6,575.  If so, ATF "consider[s]" six additional factors to determine "whether the weapon is designed, made, and intended to be fired from the shoulder." *Ibid.*  But ATF refuses to say which are outcome determinative, reserving the prerogative to make a judgment based on "th'ol' 'totality of the circumstances' test"—that is, the test "most feared by [regulated parties] who want to know what to expect." *United States v. Mead Corp.*, 533 U.S. 218, 241 (2001) (Scalia, J., dissenting).  Worse, ATF admits that it will use its self-conferred discretion to ensure that "a majority of the existing firearms equipped with a 'stabilizing brace'" are subjected to NFA regulations.  Rule, 88 Fed. Reg. at 6,480.

The infinitely malleable nature of the Rule renders it arbitrary and capricious.  It is well settled that when an agency intends to apply "a multi-factor test through case-by-case adjudication," some explanation is required to provide "predictability and intelligibility" to regulated parties. *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004) (Roberts, J.); *see United States Postal Serv. v. Postal Regul. Comm'n*, 785 F.3d 740, 753–54 (D.C. Cir. 2015).  Otherwise, those seeking to conform their conduct to the regulation cannot know "which factors are significant and which less so, and why." *LeMoyne-Owen Coll.*, 357 F.3d at 61.

ATF's "factors, which are both general and unweighted, invite inquiry into areas of doubtful relevance rather than make the [regulated] conduct any clearer." *Rec. Head Corp.*, 682 F.2d at 677.  ATF describes its factors as enabling an "objective" assessment of certain "design features common to rifles."  Rule, 88 Fed. Reg. at 6,513.  Throughout the preamble, however, ATF undermines that description by stating that its articulated factors "are not themselves determinative," *id.* at 6,518, that ATF "may" elect not to use them in some cases, *id.* at 6,512, 6,531, 6,537, and that its determinations are made "on a case-by-case basis," *id.* at 6,495.  In other

words, classification as a short-barreled rifle is ultimately based on agency discretion.

Federal courts have previously invalidated ATF's attempts to devise discretionary, multi-factor tests that would authorize the agency to make NFA classifications without a workable standard. In *Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14 (D.D.C. 2014), the court held unlawful ATF's attempt to classify a "stabilizer brake" as a "silencer" based upon "six characteristics that are allegedly common to 'known silencers.'" *Id.* at 25. The agency's six factor test was meaningless, the court said, because ATF had never explained "how many characteristics in common are necessary to be classified as a 'firearm silencer.'" *Ibid.* Without any guidance on how to weigh the six factors, ATF "le[ft] [Plaintiff-Intervenor] (as well as other regulated parties, and reviewing courts) guessing" at how to apply the agency's purported standard. *Ibid.* Therefore, ATF's classification decision under its unworkable standard was under the APA. *Id.* at 26.

The similarities between the Rule and the standard rejected by *Innovator Enterprises* are obvious. Here, just like there, ATF has developed a list of six factors to enable comparisons between the object in question and an NFA-regulated item. And here, just like there, the agency has failed to explain how many factors must be satisfied to bring the item within the NFA. The result, as in *Innovator Enterprises*, is that ATF has propounded an amorphous regulation that leaves Plaintiff-Intervenor, "other regulated parties, and reviewing courts[,] guessing." *Id.* at 25.

If the reservation of discretion were not enough, ATF has indicated that it will use its self-conferred discretion not for fair determinations but to accomplish the Administration's political goal to "treat pistols modified with stabilizing braces" as "subject to the National Firearms Act." President's Remarks on Gun Violence Prevention Efforts at 3. Indeed, ATF's final regulatory impact analysis predicts that future classification decisions under the Rule will result in ATF deeming 99 percent of pistols equipped with stabilizing braces as subject to NFA regulation.

16

Regulatory Analysis at 21; *see also* Rule, 88 Fed. Reg. at 6,479 ("a majority of" braced guns "fall under the purview of the NFA").

ATF is already making good on its prediction, issuing more than 60 contemporaneous Adjudications that purport to apply the Rule to various weapons and platforms. The Adjudications find that 100% of examined items are "short-barreled rifles" under the Rule. *See generally* Platforms Adjudication; Firearms Adjudication. And they provide no explanation for ATF's conclusions, consisting solely of pictures. *Ibid.*

2.      The Factors Are Individually Arbitrary.

a.      *Rear Surface Area.*

The Rule establishes that the term "rifle" "shall include a weapon that is equipped with an accessory, component, or other rearward attachment . . . that provides surface area that allows the weapon to be fired from the shoulder." Rule, 88 Fed. Reg. at 6,575. Numerous commenters asked the agency to clarify the amount of surface area it deems sufficient. But ATF rejected those pleas, asserting—without explanation—that it is "not . . . necessary to specify a quantifiable metric for what constitutes surface area that allows for shouldering of the weapon." *Id.* at 6,529.

That is arbitrary and capricious. In *Tripoli Rocketry Ass'n v. ATF*, 437 F.3d 75 (D.C. Cir. 2006), the D.C. Circuit held unlawful ATF's determination that hobby rocket fuel "deflagrates" because "the agency [had] never define[d] a range of velocities within which materials will be considered to deflagrate." *Id.* at 81. "[A]s a reviewing court," the D.C. Circuit explained, "we require *some* metric for classifying materials not specifically enumerated in the statute, especially when, as here, the agency has not claimed that it is impossible to be more precise in revealing the basis upon which it has made a scientific determination." *Ibid.*

The flaw the D.C. Circuit identified is evident in the Rule. The preamble states "ATF will not attempt to precisely measure or quantify the surface area or make the determination based on

17

the existence of any minimum surface area," Rule, 88 Fed. Reg. at 6,529, but does not say why it will not do so or claim that it would be impossible to provide "a concrete standard," *Tripoli Rocketry*, 437 F.3d at 77; *cf. United States v. Lim*, 444 F.3d 910, 916 (7th Cir. 2006) (holding NFA regulation of short-barreled shotgun not unconstitutionally vague because the statute "*supplies the specific measurements that will bring a shotgun within the proscribed zone*") (emphasis added). Therefore, the surface area prerequisite is arbitrary.

b.     *Weight and Length.*

The Rule requires ATF to assess whether a weapon "has a weight or length consistent with the weight or length of similarly designed rifles." Rule, 88 Fed. Reg. at 6,575. According to ATF, "the weight and length of a firearm are quantifiable, easily measured metrics." *Id.* at 6,513. As with rear surface area, however, the Rule fails to provide a metric that satisfies this factor or to otherwise meaningfully "articulate[ ] the standards that [will] guide[ ] [ATF's] analysis." *Tripoli Rocketry*, 437 F.3d at 81.

Consider the preamble. ATF says that this factor will assess the "weight and length of the firearm as compared to the length of similarly designed rifles." Rule, 88 Fed. Reg. at 6,552. But ATF's list of comparators is its database of "more than 12,000 firearms." *Id.* at 6,514 n.103. Although the preamble includes a table which purports to provide "examples of weights and lengths consistent with rifles" from the database, *id.* at 6,514, these are not helpful because they encompass broad ranges from 2 pounds to 10 pounds and 18-1/2 inches to 38-1/2 inches, *id.* at 6,514–19. Nowhere does the agency explain what it considers "comparable" to these ranges.

ATF also fails to explain why having a similar "weight or length" to a rifle facilitates shouldering. And simply having "characteristics in common with some category may not be very helpful in determining whether the object in question belongs in that category." *Innovator Enters.*,

18

28 F. Supp. 3d at 25–26 ("Bud Light is not 'Single-Malt Scotch,' just because it is frequently served in a glass container, contains alcohol, and is available for purchase at a tavern.").

> c.     *Length of Pull.*

The Rule requires ATF to consider whether a "weapon has a length of pull . . . that is consistent with similarly designed rifles." Rule, 88 Fed. Reg. at 6,575. As with the previous factor, ATF claims that "length of pull is a quantifiable and easily assessed measurement" and purports to provide a list of comparators. *Id.* at 6,513, 6,535–38. But also like before, ATF reserves the option to pick and choose other comparators from more than 12,000 other firearms and fails to explain what it means to be "consistent with" a comparator.

ATF offers no reason why it cannot be "more precise," *Tripoli Rocketry*, 437 F.3d at 81, by, for example, quantifying a range of lengths of pull that allow the user to place the gun "against [his] shoulder while also ergonomically allowing the shooter to engage the firearm's trigger," Rule, 88 Fed. Reg. at 6,511–12. Additionally, this factor uses the faulty logic of identifying "characteristics in common" with rifles without explaining why that commonality matters. *Innovator Enters.*, 28 F. Supp. 3d at 25–26. This factor is arbitrary.

> d.     *Marketing and Community Information.*

The Rule permits ATF to assess "[t]he manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon" and "[i]nformation demonstrating the likely use of the weapon in the general community." Rule, 88 Fed. Reg. at 6,575. But it does not explain how ATF will assess this information, permitting the agency to reach arbitrary and capricious results.

Indeed, ATF contends "the method in which a 'stabilizing brace' may be used, in isolated circumstances or by a single individual" is not "relevant to examining whether a firearm is

designed, made, and intended to be fired from the shoulder." *Id.* at 6,519.  But under its "general community" factor, ATF tries to eat its cake too, citing as probative two individuals who appear to be misusing a stabilizing brace.  *Id.* at 6,545–46.  This "internal[ ] inconsisten[cy]"—which permits ATF to cherry-pick evidence—is "arbitrary and capricious."  *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1028 (D.C. 2018).

Furthermore, ATF ignores record evidence showing that thousands of wounded warriors and other individuals have been trained or retrained to shoot by properly using a stabilizing brace. *See, e.g.*, Comments of FRAC et al., Docket No. ATF 2021R–08, AG Order No. 5070–2021, at 10–11 (filed Sept. 8, 2021) ("FRAC Comments"), Compl. Ex. E; Cicero Comments, Compl. Ex. F; Hurst Report, Compl. Ex. H.  Surely, these examples are relevant as "community information." ATF's decision to simply ignore this record evidence confirms this factor is arbitrary and capricious.

### 3.  The Cost-Benefit Analysis Is Arbitrary.

ATF concedes it was required to consider costs and benefits, Rule, 88 Fed. Reg. at 6,571– 74, consistent with its statutory requirement to determine whether the Rule was "needful" and "necessary."  26 U.S.C. § 7805(a); 18 U.S.C. § 926(a)); *see Michigan v. EPA*, 576 U.S. 743, 752 (2015).  A deficient cost-benefit analysis renders a rule arbitrary and capricious.  *See Owner-Operator Indep. Drivers Ass'n v. FMCSA*, 494 F.3d 188, 203–06 (D.C. Cir. 2007).

Here, ATF failed to consider three relevant costs.  *First*, ATF excluded from its assessment without explanation all stabilizing braces sold in 2020, 2021, and 2022.  *See* Regulatory Analysis at 18.  That oversight is significant because ATF acknowledges these are three of the six highest-production years.  *See* Rule, 88 Fed. Reg. at 6,560 (brace production "t[ook] off" in 2017).

*Second*, ATF failed to consider foregone "consumer surplus."  FRAC Comments at 53; Report of Todd D. Kendall, Ph.D, Compass Lexecon, at 20–21 (Sept. 7, 2021), Compl. Ex. P.

ATF instead uses the "average" sale price to calculate cost, Regulatory Analysis at 34, 59 n.107, 60–61.  Because ATF "must consider . . . all" costs, *Citizens Telecomms. Co. of Minn. v. FCC*, 901 F.3d 992, at 1010–11 (8th Cir. 2018), its unexplained failure to consider foregone surplus is arbitrary.

*Third*, ATF failed to "carefully consider[] possible reliance interests."  Rule, 88 Fed. Reg. at 6,508.  Although the agency claims to have done so, *ibid.*, that cannot be true because, again, ATF excluded from consideration all individuals who purchased braces since 2020.  ATF's failure to account for such reliance interests "was arbitrary and capricious in violation of the APA."  *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913–15 (2020).

In addition to omitting known costs, ATF made no effort to quantify purported benefits.  At most, ATF points to trace data showing that "NFA weapons are less likely to be used" by criminals, Regulatory Analysis at 68, but this observation makes no effort to establish a causal link between the Rule and any observed or predicted decrease in gun-related violence.  The correlation identified by ATF could just as easily be explained by the possibility that law-abiding citizens are more likely to purchase NFA-regulated weapons or more likely to comply with federal rules.  And even if ATF had established that traceability reduces gun-related crimes, it still would have had an obligation to determine whether any incremental benefit would justify the significant costs.

In sum, ATF had a duty to fully consider the "economic consequences of a proposed regulation," *Chamber of Com. v. SEC*, 412 F.3d 133, 144 (D.C. Cir. 2005), not merely to tally up the enormous costs that its Rule would impose on regulated parties.  At no point did ATF analyze "whether the benefits expected from the standard bear a reasonable relationship to the costs imposed."  *Am. Petroleum Inst. v. OSHA*, 581 F.2d 493, 503 (5th Cir. 1978), *aff'd sub nom. Indus. Union Dep't v. Am. Petroleum Inst.*, 448 U.S. 607 (1980).  ATF's failure is reversible error.

**C.** **The Adjudications Are Unlawful And Confirm The Rule Is Arbitrary.**

    1.   ATF Cannot Simultaneously Issue Adjudications On Specific Firearms Contemporaneously With The Rule.

ATF also acted contrary to law by issuing dozens of unreasoned Adjudications that purport to apply its newly-minted standard to preexisting popular commercial firearms at the same time and in the same proceeding that it issued the Rule.  The APA defines an "adjudication" as an "agency process for the formulation of an order" and an "order" as "the whole or a part of a final disposition . . . *in a matter other than rule making*." 5 U.S.C. § 551(6), (7) (emphasis added). Courts have thus recognized that agency attempts to conduct "hybrid" proceedings that combine rulemaking with adjudication "ignore[ ] the clear scheme of the APA." *Ass'n of Nat'l Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1160 (D.C. Cir. 1979).  It undermines basic principles of due process for an agency to adopt a new rule and then immediately apply it to an existing set of facts, without affording regulated parties notice and an opportunity to respond.  *See, e.g.*, *Am. Airlines, Inc. v. C. A. B.*, 359 F.2d 624, 631 (D.C. Cir. 1966) (criticizing agency action that "is couched as [a] rule making, general in scope and prospective in operation, but in substance and effect is individual in impact and condemnatory in purpose"); *Forsyth Mem'l Hosp., Inc. v. Sebelius*, 652 F.3d 42, 43 (D.C. Cir. 2011) (Brown, J., dissenting from denial of rehearing en banc).

ATF's use of a "hybrid" proceeding here is especially prejudicial, where ATF adopted a Rule that differs substantially from the points-based "worksheet" it initially proposed and then proceeded to classify firearms under its new approach using little more than pictures.  This mode of proceeding is contrary to the APA and the Rule should be vacated for that reason alone.

    2.   The Adjudications Are Contrary To Law.

The Adjudications apply provisions in the Rule that conflict with the statutory text. Thus, like the Rule, the Adjudications are inconsistent with the NFA and GCA and, for that reason, must

be vacated.  *See Garcia-Carias v. Holder*, 697 F.3d 257, 264 (5th Cir. 2012) (invalidating agency action for applying a rule inconsistent with the statute's plain language).

In addition, none of the Adjudications satisfy the APA's "requirement that [ATF] provide a reasoned explanation for its action."  *Regents of the Univ. of Cal.*, 140 S. Ct. at 1916.  Each Adjudication simply presents a picture of a brace-affixed weapon and then labels it a short-barreled rifle.  These "conclusory statements" "do not suffice," *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016), because the agency has not offered "reasons that can be scrutinized by courts and the interested public," *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2576 (2019).

3.    The Adjudications Confirm That The Rule Is Arbitrary.

ATF's Adjudications confirm what is obvious from the Rule:  the agency's "factoring criteria" are window dressing that allow ATF to reach whatever result it wants.  ATF's treatment of the SB-Mini brace demonstrates this clearly.  ATF has twice before issued preliminary decisions opining that pistols affixed with the SB-Mini are ***not*** short-barreled rifles.  *See* Rule, 88 Fed. Reg. at 6,492 (preliminary classification letter issued in 2020), 6,496 (example classification issued in 2021 Notice).  Now, ATF—with no analysis—has reversed course and classified an "AR-type Firearm with SB-Mini Attached" as a "Short-barreled Rifle."  Platforms Adjudication at 8.

ATF's conclusory treatment of the SB-Mini Adjudication confirms that its Rule is standardless.  An SB-Mini-equipped AR-type pistol has a length of pull of 11-3/8 inches, Notice, 86 Fed. Reg. at 30,837, which is shorter than both the average length of pull for rifles (13-1/2 to 14-1/2 inches) and ATF's example AR-15 length of pull (13 inches), Rule, 88 Fed. Reg. at 6,535.  Its overall length of 25-1/8 inches, Notice, 86 Fed. Reg. at 30,837, is nearly eight inches shorter than ATF's example AR-15 length (33 inches), Rule, 88 Fed. Reg. at 6,516.  The SB-Mini equipped pistol in the agency's photograph lacks sights or a scope that only facilitate shoulder-firing and it has been marketed as a "Pistol Stabilizing Brace" that is neither designed nor intended

23

to be fired from the shoulder.   But despite at least four of the six factors cutting against shouldering—and having twice before concluded that this product was not a rifle—ATF apparently felt that it did not even have to bother explaining its contrary result.  If that is how the Rule works, then it is not "reasoned decisionmaking." *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 857 (5th Cir. 2022) (quoting *Michigan*, 576 US at 750).

## II.   PLAINTIFF-INTERVENOR WILL BE IRREPARABLY HARMED ABSENT AN INJUNCTION.

Absent preliminary relief, CMMG will suffer irreparable economic harm.  Since the announcement of the Rule last month, CMMG's sales of braced guns—which account for 85% of its revenues—have ceased entirely, and it has been forced to let go of 7% of its full-time employees.  Declaration of Chris Reinkemeyer ¶¶ 5, 13, Compl. Ex. G.  CMMG's customers have returned approximately $300,000 worth of brace products and canceled approximately $500,000 of brace orders.  *Id.* ¶ 17.   Approximately $4,000,000 of CMMG's inventory cannot readily be sold.  *Id.* ¶ 18.  CMMG expects to imminently lay off as much as 20% of its workforce.  *Id.* ¶ 13. "[F]inancial injury" that "threatens the very existence of [a party's] business" "suffices to show irreparable injury." *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) (citations omitted).  And "complying with a regulation" that may later be held invalid "almost always produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1992) (Scalia, J., concurring in part)).

Absent an injunction, CMMG will also suffer irreparable reputational damage.  CMMG's customers purchased their products with the understanding that braces were "perfectly legal accessories for large handguns or pistols."  *See* 2017 Letter at 1, Compl. Ex. N.  Even if ATF allows these parties to turn in or modify their weapons, ATF's regulatory about-face will cause

CMMG to suffer an immeasurable loss of consumer goodwill, which qualifies as irreparable harm. *Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78 (N.D. Tex. 2022) ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable."). Each day the Rule and Adjudications are able to place a cloud of legal doubt on CMMG's business practices will result in further irreparable harm.

## III.   THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR GRANTING AN INJUNCTION.

The balance-of-harm and public-interest "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Plaintiff-Intervenor's likelihood of success on the merits also establishes a strong showing under this factor because "there is generally no public interest in the perpetuation of unlawful agency action."  *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1143 (citations and quotations omitted); *see BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021).

Granting an injunction would "preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained."  *Delta Air Lines*, 847 F.3d at 285. Even if Defendant had a legitimate interest in implementing the Rule, it faces no prejudice from delay since the government's interest "can be effectively vindicated after a trial on the merits." *Texas v. United States*, 809 F.3d at 187.  But allowing ATF to enforce its unlawful Rule and Adjudications will cause significant harm by subjecting millions of law-abiding Americans to extensive unlawful regulation under threat of felony gun charges.

## CONCLUSION

Because Plaintiff-Intervenor has established that it will succeed on the merits and that the other three factors favor preliminary relief, this Court should preliminarily enjoin ATF from enforcing the Rule and the Adjudications.

February 17, 2023

/s/ Dusty J. Stockard
Dusty J. Stockard
Texas Bar No.: 24028014
**STOCKARD, JOHNSTON, BROWN
NETARDUS & DOYLE, P.C.**
1030 N. Western
Amarillo, TX 79106
Tel: 806.372.2202
Fax: 806.379.7799
DStockard@sjblawfirm.com

Stephen J. Obermeier*
Thomas M. Johnson, Jr.*
Michael D. Faucette*
Jeremy J. Broggi*
Boyd Garriott*
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
TMJohnson@wiley.law
MFaucette@wiley.law
JBroggi@wiley.law
BGarriott@wiley.law

*pro hac vice forthcoming*

*Counsel for Proposed Intervenor CMMG, Inc.*