IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

---

DARREN A. BRITTO, et al.,

      Plaintiffs,

    v.                                       Case No. 2:23-cv-00019

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

      Defendant.

---

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

---

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................. 1

   I.   The Second Amendment protects the Right to Bear Arms, including pistols with stabilizing braces. ............................................................. 1

  II.  Defendants cannot meet the high burden in *Bruen*. ......................... 6

 III.  The Rule violates the Major Questions Doctrine, and if it does not, it creates a violation of the Nondelegation Doctrine. ........................... 8

 IV.  Defendant's Rule conflicts with the statutory definition of "rifle." ............... 10

     A.  The Rule conflicts with the statutory text. ............................... 10

     B.  The Rule of Lenity should be applied here. ............................. 13

  V.  The Rule is arbitrary and capricious and void for vagueness. ....................... 14

     A.  The Rule is arbitrary and capricious. ..................................... 14

     B.  The Rule is void for vagueness. ............................................. 15

 VI.  Plaintiffs will be irreparably harmed absent an injunction and the balance of harms weighs in Plaintiffs' favor. ................................... 16

VII.  Nationwide relief is available and appropriate. ............................. 16

CONCLUSION ............................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*BST Holdings v. OSHA*,
  17 F.4th 604 (5th Cir. 2021) ............................................................ 16

*Caetano v. Massachusetts*,
  577 U.S. 411 (2016) .......................................................................... 5

*D.C. v. Heller, 554 U.S. 570 (2008)* ...................................... 3, 5, 7

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ............................................................ 2

*Fyock v. Sunnyvale*,
  779 F.3d 991 (9th Cir. 2015) ............................................................ 2

*Hollis v. Lynch*,
  827 F.3d 436 (5th Cir. 2016) ............................................................ 5

*Humane Soc'y of U.S. v. Zinke*,
  865 F.3d 585 (D.C. Cir. 2017) ........................................................ 17

*Jackson v. City & Cnty. of San Francisco*,
  746 F.3d 953 (9th Cir. 2014) ............................................................ 2

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ............................................................ 9

*Jones v. SEC*,
  298 U.S. 1 (1936) .............................................................................. 9

*Maloney v. Singas*,
  351 F. Supp. 3d 222 (E.D.N.Y. 2018) .............................................. 6

*Marchetti v. United States*,
  390 U.S. 39 (1968) ............................................................................ 4

*McDonald v. City of Chicago, Ill.*,
  561 U.S. 742 (2010) .......................................................................... 3

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995) .......................................................................... 3

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*,
  145 F.3d 1399 (D.C. Cir. 1998) ...................................................... 17

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel.
  Patterson*, 357 U.S. 449 (1958) ...................................................... 3

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) .............................................................. passim

*Sig Sauer, Inc. v. Brandon,*
    826 F.3d 598 (1st Cir. 2016) .............................................................................. 12

*Sugar Cane Growers Co-op. of Fla. v. Veneman,*
    289 F.3d 89 (D.C. Cir. 2002) ............................................................................. 17

*Texas v. EPA,*
    829 F.3d 405 (5th Cir. 2016) .............................................................................. 17

*U.S. v. Brooks,*
    681 F.3d 678 (5th Cir. 2012) .............................................................................. 15

*U.S. v. Thompson/Ctr. Arms Co.,*
    504 U.S. 505, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (1992) ................................ 11

*United States v. Santoro,*
    242 F.App'x 627 (11th Cir. 2007) ...................................................................... 11

*United States v. Zeidman,*
    444 F.2d 1051 (7th Cir. 1971) ............................................................................ 11

*VanDerStok v. Garland,*
    No. 4:22-CV-00691-O, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) .............. 16

*W. Virginia v. EPA,*
    142 S. Ct. 2587 (June 30, 2022) ...................................................................... 8, 9

*Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.,*
    16 F.4th 1130 (5th Cir. 2021) ............................................................................ 16

*Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton,*
    536 U.S. 150 (2002) ............................................................................................ 3

*Yukutake v. Conners,*
    554 F. Supp. 3d 1074 (D. Haw. 2021) ................................................................ 4

**Statutes**

18 U.S.C. § 921 ........................................................................................................ 2

26 U.S.C. § 5845 ...................................................................................................... 2

5 U.S.C. § 705 ........................................................................................................ 17

5 U.S.C. § 706 ........................................................................................................ 17

**Other Authorities**

David G. Browne, Treating the Pen and the Sword As Constitutional Equals:
    How and Why the Supreme Court Should Apply Its First Amendment
    Expertise to the Great Second Amendment Debate,
    44 Wm. & Mary L. Rev. 2287 (2003) ................................................................. 8

James A. D'Cruz, Half-Cocked: The Regulatory Framework of Short-Barrel
    Firearms, 40 Harv. J.L. & Pub. Pol'y 493 (2017) .............................................. 8

Michael S. Obermeier, *Scoping Out the Limits of "Arms" Under the Second Amendment*, 60 U. Kan. L. Rev. 681 (2012) ..................................................... 8

**Federal Regulations**

88 Fed. Reg. 6478 (Jan. 31, 2023) ...................................................................... 1, 2, 15

## INTRODUCTION

As explained in Plaintiffs' motion for a temporary restraining order and preliminary injunction and the accompanying brief in support, for a variety of constitutional and statutory reasons, Plaintiffs are likely to succeed in their challenge against ATF's unlawful Rule.[1] ATF responded, believing not only that their rule meets constitutional muster, but that it also abides by all statutory requirements. For the reasons explained in Plaintiffs' opening brief, and as further explained herein, ATF is wrong.

The Court should grant Plaintiffs' motion and enter an injunction prohibiting enforcement of the Rule.

## I.   The Second Amendment protects the Right to Bear Arms, including pistols with stabilizing braces.

The Second Amendment protects "an individual right to keep and bear arms for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2125 (2022). This right applies to "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 2132 (citations omitted). "[T]he Second Amendment's definition of 'arms'…covers modern instruments that facilitate armed self-defense." *Id.* So when an individual bears an instrument that facilitates armed self-defense, "the Constitution presumptively protects that conduct." *Id.* at 2129–30. And the government bears the burden to

---

[1] Plaintiffs' references to "the Rule" herein refer to ATF's "Factoring Criteria for Firearms With Attached 'Stabilizing Braces'" rule, which is challenged in this action. 88 Fed. Reg. 6478 (Jan. 31, 2023).

"justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

Defendants assert three arguments as to why the Second Amendment does not apply in this case. All three are wrong.

First, Defendants argue that stabilizing braces are just "accessories" or "attachments" that do not implicate the Second Amendment. ECF 33:26–27. But this is not a case about just stabilizing braces. The Rule seeks to regulate "firearms with an attached 'brace' device," and not "stabilizing braces" by themselves. 88 Fed. Reg. 6478. Pistols with stabilizing braces are undeniably "instruments that facilitate armed self-defense." *Bruen*, 142 S. Ct. at 2132. Each Plaintiff testifies that he uses this instrument for self-defense. See ECF 15-1:3–4, 6. Moreover, the Second Amendment covers firearms *and* items "necessary to use" those firearms. *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015) (recognizing the "right to possess the magazines necessary to render ... firearms operable"); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014); ("[W]ithout bullets, the right to bear arms would be meaningless."); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use").[2]

---

[2] Defendants also argue that stabilizing braces are just like silencers. This analogy is unhelpful because silencers are specifically defined as "firearms" in 18 U.S.C. § 921(a)(3) and 26 U.S.C. § 5845. Stabilizing braces, conversely, are not defined as a firearm, meaning Defendants' authority to regulate silencers is different from their authority to regulate stabilizing braces. Plaintiffs also note that no court has yet to evaluate silencers under *Bruen*, and perhaps with the benefit of this new case, a court may evaluate silencer regulations under the Second Amendment.

Second, Defendants argue that the Rule does not implicate the Second Amendment because this is just about registration, and gun registries are always constitutional. ECF 33:28–30. There is no support for this proposition—registries certainly implicate constitutional rights since they eliminate the ability to exercise a constitutional right anonymously. *See, e.g, Watchtower Bible & Tract Soc'y of New York, Inc. v. Vill. of Stratton*, 536 U.S. 150, 165–66 (2002). The right to anonymity protects "unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). As the Court explained in *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, "compelled disclosure of membership [lists] of an organization engaged in advocacy of particular beliefs" is a "restraint on freedom of association." 357 U.S. 449, 462 (1958). It is the same as requiring "adherents of a particular religious faith or political parties [to] wear identifying arm bands." *Id.* (citation omitted).

In the same way,[3] Defendants are wrong to argue that a firearm registry "does not implicate the Second Amendment." ECF 33:28. If that were the case, then the government could require *anyone* who owns *any weapon* covered by the Second

---

[3] The Supreme Court has explained that First Amendment case law illuminates the Second Amendment. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 780 (2010); *D.C. v. Heller*, 554 U.S. 570, 595 (2008); *NRA v. ATF*, 700 F.3d 185, 198 (5th Cir. 2012) (using First Amendment principles to interpret the Second Amendment).

Amendment to register that weapon with the federal government.[4] But the Government here bears the burden in this case to establish that this particular gun-registration scheme for pistols with stabilizing braces is supported by historical evidence. *See Bruen*, 142 S. Ct. 2111. "Although certain registration requirements may be longstanding, it does not follow that *all* registration requirements are." *Yukutake v. Conners*, 554 F. Supp. 3d 1074, 1086 (D. Haw. 2021) (emphasis added). Defendants ultimately cannot justify the Rule under the Second Amendment because there is no historical analogue to support the type of registration-and-tax regime established by the Rule.

Third, and finally, Defendants argue that the Second Amendment does not apply to pistols with stabilizing braces because they are "dangerous and unusual" weapons. ECF 33:30. The *Bruen* Court did *not* adopt a generic "dangerous and unusual" weapon standard, which would allow any district court to consider, subjectively, weather a particular firearm was "dangerous and unusual."[5] Instead, the Court squarely focused lower courts on the proper standard: "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. In fact, when applying this

---

[4] And furthermore, a registration scheme that requires the submission of information to law enforcement creates the threat of self-incrimination. *Marchetti v. United States,* 390 U.S. 39 (1968).

[5] The *Bruen* Court carefully considered the phrase "dangerous and unusual," cautioning that "we were not undertaking an exhaustive historical analysis today of the full scope of the Second Amendment" and then moved on to the constitutionality of the District of Columbia's handgun ban." *Bruen*, 142 S. Ct. at 2128 (quoting *Heller* at 627).

standard, the Court only considered whether firearms at issue are "in common use today for self-defense," notably dropping the adjective "dangerous." *See Bruen*, 142 S. Ct. at 2143.

Defendants point to *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016) to support their theory that pistols with stabilizing braces are actually "dangerous and unusual." But that decision does not apply *Bruen*. Moreover, pistols are not machine guns, and pistols with stabilizing braces are not more dangerous than an average pistol without a stabilizing brace. The record indicates that stabilizing braces make the firearm safer and more accurate. (ECF 15-1:3–4, 6). Moreover, these firearms are not "unusual" because the Second Amendment protects all weapons "in common use." *Bruen*, 142 S. Ct. at 2143. Stated another way, only those firearms "*not* typically possessed by law-abiding citizens for lawful purposes" do not enjoy Second Amendment protection. *Heller*, 554 U.S. at 625 (emphasis added). Pistols with stabilizing braces are ubiquitous and therefore common. The Congressional Research Service estimates there are between 10 and 40 million pistols with stabilizing braces in the United States. (ECF 1, ¶ 25)[6]. Defendants do nothing to dispute this, other than saying they believe there are only 3 million of these braces. Under either scenario, these firearms are common.[7]

─────────────

[6] "Handguns, Stabilizing Braces, and Related Components," Congressional Research Service (April 19, 2021), available [here](#).

[7] In *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016), Justice Alito stated in concurrence that stun guns "are widely owned and accepted as a legitimate means of self-

## II.   Defendants cannot meet the high burden in *Bruen*.

Since the Second Amendment is implicated by the Rule, the burden rests squarely upon Defendants to justify their regulation. This is the high bar Defendants must meet: "whether [the Rule is] consistent with the Second Amendment's text and historical understanding," *Bruen*, 142 S. Ct. at 2131. To meet this challenge, Defendants must "identify a well-established and representative historical analogue." *Id*. at 2133.

Defendants vaguely claim that from "colonial times, state and local governments have routinely exercised their authority to regulate the possession and manufacture of firearms, through taxation, registration, licensing, and similar requirements." ECF 33:34. Specifically, Defendants point to "door-to-door surveys" in three states, without evidence that these surveys were required, universal, for what type of weapon, and without discussing the purpose and use of such surveys. Defendants then cite a handful of laws requiring "inspection" of "firearms" and "all musket and pistol barrels" for safety purposes, without any indication that the inspections were part of the type of registration-and-taxation scheme established by the Rule. ECF 33:34–35. Defendants finally cite a few examples of licenses to "transport gunpowder," three states that required "licenses for the sale of pistols" and

---

defense across the country," based on evidence that just "hundreds of thousands of Tasers and stun guns have been sold to private citizens." *Id*. (Alito, J., concurring).  And the Eastern District of New York found nunchakus to be protected arms despite the Plaintiffs only being able to prove "64,890 nunchakus" in civilian hands. *Maloney v. Singas*, 351 F. Supp. 3d 222, 237-38 (E.D.N.Y. 2018).

the possession of personal firearms "for sporting purposes," and some taxation schemes. *Id.*

In Defendants' view, because some states historically regulated firearms *in general*, Defendants may now impose a *specific* type of registration-and-taxation scheme impacting only one type of firearm (pistol) constructed with a particular type of accessory (stabilizing brace). If Defendants are correct, then the government may impose a national registry for any type of firearm (or perhaps all firearms). If the standard announced in *Bruen* is simply that the government must identify, in general, prior regulatory schemes, then any firearm registry would almost certainly be constitutional.

But much more is required. The "analogical reasoning" requirement is not "a regulatory blank check." *Bruen*, 142 S. Ct. at 2133. "Courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted." *Id.* In *Heller*, the Court explained the baseline standard: "[f]or most of our history, … the Federal Government did not significantly regulate the possession of firearms by law-abiding citizens." *Heller*, 554 U.S. at 625. So merely pointing out prior regulatory schemes is not enough.

Based on a review of the historical evidence, Plaintiffs are aware of no regulation of a firearm based on the length of the barrel prior to the National Firearms Act in 1934. In fact, there appears to be a broad historical tradition, contemporaneous with the founding era, of short-stocked pistols or short-barreled

7

rifles in widespread existence. *See, e.g.,* James A. D'Cruz, Half-Cocked: The Regulatory Framework of Short-Barrel Firearms, 40 Harv. J.L. & Pub. Pol'y 493, 503 (2017); Michael S. Obermeier, Scoping Out the Limits of "Arms" Under the Second Amendment, 60 U. Kan. L. Rev. 681, 706 (2012) ("Sawed-off shotguns" and "short-barreled rifles . . . are analogous to weapons existing in the eighteenth century."); David G. Browne, Treating the Pen and the Sword As Constitutional Equals: How and Why the Supreme Court Should Apply Its First Amendment Expertise to the Great Second Amendment Debate, 44 Wm. & Mary L. Rev. 2287, 2295 (2003) ("compact and even pistol-sized shotguns were used in combat as far back as the seventeenth century")

In short, there is no evidence of founding era tax-and-registration schemes for short-barrel rifles (or pistols with anything similar to a stabilizing brace). Defendants, therefore, have not met their burden under *Bruen.*

## III.   The Rule violates the Major Questions Doctrine, and if it does not, it creates a violation of the Nondelegation Doctrine.

The Major Questions Doctrine refers to a "particular and recurring problem: agencies asserting highly consequential power beyond what Congress could reasonably be understood to have granted." *W. Virginia v. EPA*, 142 S. Ct. 2587, 2609 (June 30, 2022). When agencies locate a "newfound power in vague language" of an act, courts should consider carefully whether Congress "mean to confer [on the agency] the authority it claims." *Id.* at 2610.

Defendants, as expected, believe the Rule is no big deal and not "highly consequential." In fact, they call it just a "bread and butter" regulation. But consider

for a moment what they portend to do: the Rule takes up to 40 million pistols (not regulated by the National Firearms Act) and then labels those pistols as "short-barrel rifles." Congress clearly did not intend for pistols to be covered by the National Firearms Act, and so it is not a frivolous question to consider whether Congress intended to grant such a substantial power of re-definition (pistols to rifles) to Defendants. We think they did not. As explained by the Supreme Court, the Major Questions doctrine is relevant when a regulation is "unprecedented" and effects a "fundamental revision of the statute, changing it from one sort of scheme of regulation into an entirely different kind." *W. Virginia,* 142 S. Ct. at 2612 (citation omitted). Here, after a decade of taking one position, Defendants entirely change their position and now grasp a power they have shunned by redefining "rifle" to mean "pistol."

If Congress did, indeed, delegate Defendants this power to re-define pistols as rifles, then the relevant statutes' "total absence of guidance is impermissible under the Constitution." *Jarkesy v. SEC*, 34 F.4th 446, 462 (5th Cir. 2022). Defendants' position (that this is no big deal) is no defense. If Defendants are "permitted gradually to extend their powers by encroachments—even petty encroachments—upon the fundamental rights, privileges and immunities of the people, we shall in the end, while avoiding the fatal consequences of a supreme autocracy, become submerged by a multitude of minor invasions of personal rights, less destructive but no less violative of constitutional guaranties." *Jones v. SEC*, 298 U.S. 1, 24–25 (1936). If Congress did, in fact, delegate the power to define any firearm (including pistols) as a "rifle" and

9

bring those firearms under the NFA's taxation-and-registration requirements, then such unbridled power must be checked by the Nondelegation Doctrine.

## IV.   Defendant's Rule conflicts with the statutory definition of "rifle."

Beyond the constitutional concerns with the Rule, it also violates the statute because it purports to rewrite the plain and unambiguous statutory definition of "rifle." To the extent that Defendant believes the definition is ambiguous, and requires some "clarification" in order to understand, then the Rule of Lenity requires that ambiguity to be cleared up in favor of the Plaintiffs, not the Defendant. Either way, the Rule is unlawful and must be set aside.

### A.   The Rule conflicts with the statutory text.

The Rule is unlawful because it is an attempt to rewrite the statutory definition of "rifle." As a result, the rule necessarily *conflicts with* the statute, and it is thus unlawful and must be set aside.

Defendants make several arguments as to why they believe the Rule does not conflict with the statutory definition of "rifle." First, they say that Courts have long recognized that a pistol could be made into a rifle if it had rifle components. Second, they argue that the statute requires them to review the "objective design features" of a weapon when determining whether or not a particular weapon is a "rifle" or not. Third, they claim there is no "exclusive use" requirement and so it is immaterial as to whether or not a pistol is actually designed, made and intended to be fired as a pistol–so long as, Defendant argues, it could at some point *also* be fired from the shoulder. But all three of these assertions fail.

First, Defendant claims that the Supreme Court's opinion in *U.S. v. Thompson/Center Arms Co.* works against Plaintiffs because, they say: ". . . the court explained that packaging a .22 caliber pistol with a carbine kit and a rifle stock brings the firearm 'within the 'intended to be fired from the shoulder' language contained in the [NFA's] definition of rifle.'" (ECF 33:29), but they are wrong. First, the footnote they cite to is from the Court's plurality opinion, and does not constitute a majority opinion of the court. But even if it did, that case dealt with *rifle* components which were shipped with a pistol. Third, and most importantly, the Court in *Thompson/Center Arms* concluded the opposite of what Defendant is now claiming they did. The Court actually concluded that packaging all of those parts together *did not* make the weapon a "rifle" subject to the requirements of the NFA (". . . we conclude that the Contender pistol and carbine kit when packaged together by Thompson/Center have not been "made" into a short-barreled rifle for purposes of the NFA." *U.S. v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 518, 112 S. Ct. 2102, 119 L. Ed. 2d 308 (1992). Defendant's argument to the contrary is bizarre.

Likewise, Defendant's citations to *United States v. Zeidman*, 444 F.2d 1051 (7th Cir. 1971) and *United States v. Santoro*, 242 F.App'x 627 (11th Cir. 2007) are of no help to them. Those cases both dealt with *shoulder stocks*. This case deals with an arm brace that Defendant says "may" or "could" be fired from the shoulder. But that's not what the statute requires: the statute requires a weapon to be made, designed and intended to be fired from the shoulder.

11

Second, Defendant claims that the statute requires them to look at the "objective design features" of a weapon, and that all the Rule does is facilitate that. Defendant says "courts have agreed . . . that ATF properly considered the objective design features of a particular product . . ." ECF 33:18.[8] They cite to *Sig Sauer, Inc. v. Brandon*, 826 F.3d 598 (1st Cir. 2016), to support this argument. But that case dealt with the statutory definition of a "silencer," which, as already discussed *supra*, is decidedly different from that the definition of a "rifle."

Here, there is no dispute that a pistol with a *rifle* stock could be a "rifle" for NFA purposes. That's what the statute requires: a weapon with a rifle stock was clearly designed, made and intended to be fired from the shoulder. What the rule does, unlawfully, is *expand* the definition of "rifle" to cover any weapon which *may* or which *could* be fired from the shoulder–regardless of whether it was *actually* designed, made and intended to be fired from the shoulder.

Finally, as to Defendant's third argument that there is no "exclusive use" requirement in the definition of "rifle"–Plaintiffs never made such a claim. What Plaintiffs have argued, consistent with the statutory text, is that a weapon must be designed, made and intended to be fired from the shoulder to qualify as a rifle. Thus, any weapon which was *not* designed, *not* made, and was *not* intended to be fired from the shoulder *cannot be* a rifle. The cases cited to by Defendant confirm this as well.

---

[8] Plaintiffs also point out the inconsistency in ATF's arguments. When convenient for their Second Amendment response, ATF argues that a stabilizing brace is just a part and not subject to the Second Amendment analysis, but when it comes to their response on these statutory arguments, they consider everything as one item for the analysis.

Specifically, Defendant cites to several cases for the proposition that Courts do not read words into statutes that aren't there–and yet, that is the entire basis of the Rule, and Plaintiffs' statutory argument against it. As Plaintiffs explained in their opening brief, what the Rule does is expand the statutory definition of "rifle" to include any weapons that "may be fired from the shoulder" or "could be fired from the shoulder." Except those words do not appear anywhere in the statute.

For these reasons, and as further explained in Plaintiffs' opening brief, the rule conflicts with federal law and must be set aside.

### B.      The Rule of Lenity should be applied here.

Defendant gives short shrift to Plaintiff's Rule of Lenity argument on statutory interpretation. They simply conclude "traditional tools of statutory construction firmly support the Rule's application of the statutory definition of 'rifle' to weapons equipped with 'stabilizing braces' . . ." ECF 33:21. But that's not true, and Defendant's near decade-long finding of the *opposite* helps to illustrate this point. Indeed, Defendant interpreted the statutory text one way for nearly a decade, and how now concluded the exact opposite.

In *Thompson/Center Arms Co.* the Supreme Court already concluded that a different definition under the NFA was ambiguous and applied the rule of lenity. As explained, Plaintiffs believe the definition of "rifle" to be plain and unambiguous. To the extent that there *is* ambiguity, as Defendant argues, that ambiguity *cannot* be interpreted to increase criminal liability as the Rule purports. Thus, the Rule of Lenity requires the Rule to be set aside.

**V.      The Rule is arbitrary and capricious and void for vagueness.**

**A.      The Rule is arbitrary and capricious.**

As Plaintiffs explained in their opening brief, Defendant failed to acknowledge their prior position. Instead, Defendant continues to argue that it was "a change in position from some of ATF's previous classifications or positions . . ." ECF 33:22, citing 88 Fed. Reg. 6501–02 (emphasis added). Yet, Defendant does not acknowledge the full weight of the reversal it is engaging in, or acknowledge the extent of its prior assertions on the topic.

For example, as Plaintiffs explained in their opening brief: in 2015, Defendant issued an "open letter" which stated in no uncertain terms that attaching a stabilizing brace to a pistol "does not alter the classification of the firearm or subject the firearm to National Firearms Act (NFA) control."[9] See also, ECF 15:10. Americans everywhere relied upon ATF's position, apparently now to their own detriment as Defendant has now decided to pull a complete 180 in issuing the Rule challenged herein.

Defendant's failure to acknowledge the significance and clarity of its prior statements here, and to instead characterize those as merely clarifying uncertainty that did not exist, is absolutely arbitrary and capricious, and for those reasons, the Rule should be set aside.

---

[9] ATF Open Letter on the Redesign of "Stabilizing Braces," from Max Kingery, Acting Chief, Firearms Technology Criminal Branch, Firearms and Ammunition Technology Division, ATF (Jan. 16, 2015), available here.

### B.    The Rule is void for vagueness.

"The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *U.S. v. Brooks*, 681 F.3d 678, 696 (5th Cir. 2012). But encouraging arbitrary and discriminatory enforcement is exactly what the Rule does.

As Plaintiffs explained in our opening brief, Defendant's "two-step" analysis is flawed. First, they determine whether the mythical "surface area" exists on the rear of the weapon. Defendant argues this is not vague because the rule "includes dozens of pictures and graphics illustrating the surface area the Rule is concerned with—clarifying any remaining ambiguity." ECF 33:24. But the rule itself is still vague, and even though Defendant included "pictures and graphics" with it, it is hard to imagine *any* firearm that does not have "surface area" that would allow Defendant to move on to the second step of their analysis.

And Defendant does not even attempt to explain how allowing bureaucrats at Defendant to make decisions based upon things like marketing material (including "indirect" marketing material, which is also an undefined term), and a catch-all called "information demonstrating the likely use of the weapon in the general community" (see 88 Fed. Reg. at 6574–6575) are not vague. Nor could they. Instead, they just argue that because Plaintiffs could ask ATF for their opinion on whether a particular weapon qualifies or not, the rule itself is not vague. But that reasoning just underscores that the rule itself is absolutely vague.

The Rule is void for vagueness and must be set aside.

15

## VI.    Plaintiffs will be irreparably harmed absent an injunction and the balance of harms weighs in Plaintiffs' favor.

If no injunction is granted, then Plaintiffs must either destroy their weapon by permanently removing the stabilizing brace or submit to placing their names on a government registry. Defendants concede that if Plaintiffs prove a constitutional violation, then no further irreparable injury must be shown. ECF 33:40. As shown above, Plaintiffs are likely to succeed on their constitutional claims. As the Fifth Circuit observed, "the loss of constitutional freedoms for even minimal periods of time ... unquestionably constitutes irreparable injury." *BST Holdings v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (citation omitted). Even "threatened" constitutional harm can constitute irreparable harm. *VanDerStok v. Garland,* No. 4:22-CV-00691-O, 2022 WL 4009048, at *9 (N.D. Tex. Sept. 2, 2022). And "it is no answer to say that [he] may avoid the harm by complying with an unlawful agency rule" and enduring a tax, lengthy waiting period, and ongoing burdens on a registered weapon. *Id.* (quotation omitted).

There is no harm to ATF from pausing enforcement of the Final Rule and maintaining the status quo.  Indeed, "there is generally no public interest in the perpetuation of unlawful agency action." *Wages & White Lion Invs., L.L.C. v. U.S. Food & Drug Admin.,* 16 F.4th 1130, 1143 (5th Cir. 2021) (citation omitted). The balance of equities and public interest weigh in favor of an injunction.

## VII.   Nationwide relief is available and appropriate.

If this Court finds that Defendants violated the APA, then "the ordinary result is that the rules are vacated—not that their application to the individual petitioners

is proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *see also, e.g., Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 614 (D.C. Cir. 2017) ("A common remedy when we find a rule is invalid is to vacate."); *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002) ("Normally when an agency so clearly violates the APA we would vacate its action ... and simply remand for the agency to start again."). This principle flows directly from the APA's text: section 706 states that reviewing courts "shall" "set aside" unlawful agency actions. 5 U.S.C. § 706. The APA allows "the reviewing court" to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings" to "the extent necessary to prevent irreparable injury." 5 U.S.C. § 705.

For these reasons, the Fifth Circuit has stayed rules under the APA to prevent irreparable injury and this Court should do the same. *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016) ("Therefore, we stay the Final Rule in its entirety, including the emissions control requirements, pending the outcome of this petition for review.")

## CONCLUSION

For these reasons, and as stated in Plaintiffs opening brief, Plaintiffs' motion for a temporary restraining order and a preliminary injunction should be granted.

Dated: March 14, 2023.

WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC.

s/ *Lucas T. Vebber*
Richard M. Esenberg (admitted *pro hac vice*)
Daniel P. Lennington (admitted *pro hac vice*)

Lucas T. Vebber (admitted *pro hac vice)*
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org
Lucas@will-law.org

TORMEY & McCONNELL

Ed J. McConnell (Bar No. 13442500)
Jeffrey W. Tormey (Bar No. 00794746)
310 SW 6th Avenue
Amarillo, TX 79101
Telephone: (806) 414-4087
Jeff@tmcattorneys.com
Ed@tmcattorneys.com