# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| DARREN A. BRITTO, GABRIEL A. TAUSCHER, and SHAWN M. KROLL, <br><br> Plaintiffs, <br><br> CMMG, Inc. <br><br> Plaintiff-Intervenor, <br><br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, <br><br> Defendant. | Case No. 2:23-cv-00019-Z |

## CMMG INC.'s [PROPOSED] REPLY IN SUPPORT OF ITS [PROPOSED] MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 3

    I.      CMMG IS LIKELY TO SUCCEED ON THE MERITS. ....................................... 3

          A.    ATF's Opposition Confirms The Rule Exceeds Its Statutory
               Authority. ............................................................................................... 3

               1.    ATF Continues To Misinterpret "Short-Barreled Rifle." ............. 3

               2.    ATF Continues To Misinterpret "Rifle." ..................................... 5

               3.    ATF Continues To Wrongly Reject Lenity. ................................. 9

          B.    ATF's Opposition Confirms The Rule Is Arbitrary And Capricious.
               ...............................................................................................................12

               1.    ATF Confirms The Rule's Factors Are Holistically Arbitrary. .... 12

               2.    ATF Confirms The Rule's Factors Are Individually Arbitrary. ... 13

               3.    ATF Confirms The Cost-Benefit Analysis Is Arbitrary. ............. 16

          C.    ATF's Opposition Confirms Its Adjudications Are Unlawful And
               Reviewable. ...........................................................................................17

    II.     THE REMAINING FACTORS FAVOR PRELIMINARY RELIEF. ................. 19

CONCLUSION ...............................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramski v. United States,*
  573 U.S. 169 (2014)....................................................................................................4

*ANR Storage Co. v. FERC,*
  904 F.3d 1020 (D.C. Cir. 2018)................................................................................16

*Bennett v. Spear,*
  520 U.S. 154 (1997)............................................................................................17, 18

*Bittner v. United States,*
  143 S. Ct. 713 (2023)..........................................................................................1, 12

*Cargill v. Garland,*
  57 F.4th 447 (5th Cir. 2023) .....................................................................1, 3, 10, 12

*DHS v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020)..................................................................................15, 16, 17

*Est. of Miranda v. Navistar, Inc.,*
  23 F.4th 500 (5th Cir. 2022) .....................................................................................5

*Gonzales v. Oregon,*
  546 U.S. 243 (2006)....................................................................................................3

*Guedes v. ATF,*
  140 S. Ct. 789 (2020)...............................................................................................10

*Huawei Techs. USA, Inc. v. FCC,*
  2 F.4th 421 (5th Cir. 2021) ...............................................................................13, 15

*Innovator Enters., Inc. v. Jones,*
  28 F. Supp. 3d 14 (D.D.C. 2014) .....................................................................6, 12, 13

*LeMoyne-Owen Coll. v. NLRB,*
  357 F.3d 55 (D.C. Cir. 2004)...................................................................................13

*Michigan v. EPA,*
  576 U.S. 743 (2015).....................................................................................................7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983).....................................................................................................15

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022) ............................................................................12

*Nat'l Mining Ass'n v. McCarthy*,
   758 F.3d 243 (D.C. Cir. 2014) ..................................................................3

*Posters 'N' Things, Ltd. v. United States*,
   511 U.S. 513 (1994) ...............................................................................8, 9

*Record Head Corp. v. Sachen*,
   682 F.2d 672 (7th Cir. 1982) .................................................................9, 12

*Sierra Club v. EPA*,
   939 F.3d 649 (5th Cir. 2019) ....................................................................16

*Sipes v. United States*,
   321 F.2d 174 (8th Cir. 1963) ......................................................................8

*Spirit Airlines, Inc. v. FAA*,
   997 F.3d 1247 (D.C. Cir. 2021) ................................................................15

*Texas v. EEOC*,
   933 F.3d 433 (5th Cir. 2019) ....................................................................18

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ....................................................................18

*Texas v. United States*,
   40 F.4th 205 (5th Cir. 2022) ................................................................16, 17

*Tobacco Accessories & Novelty Craftsmen Merchs. Ass'n of La. v. Treen*,
   681 F.2d 378 (5th Cir. 1982) ......................................................................9

*Tripoli Rocketry Ass'n, Inc. v. ATF*,
   437 F.3d 75 (D.C. Cir. 2006) ...............................................................14, 15

*United States v. Am. Com. Lines, L.L.C.*,
   759 F.3d 420 (5th Cir. 2014) ......................................................................4

*United States v. Biro*,
   143 F.3d 1421 (11th Cir. 1998) ..................................................................9

*United States v. Cox*,
   906 F.3d 1170 (10th Cir. 2018) ..................................................................4

*United States v. Marzzarella*,
   614 F.3d 85 (3rd Cir. 2010) ........................................................................4

*United States v. Thompson/Center Arms Co.*,
    504 U.S. 505 (1992)........................................................................................7, 8, 12

*VanDerStok v. Garland*,
    ___ F.Supp.3d ___, 2022 WL 4009048 (N.D. Tex. Sept. 2, 2022) .................................19, 20

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982)..........................................................................................6, 9

*Ysleta Del Sur Pueblo v. Texas*,
    142 S. Ct. 1929 (2022)...........................................................................................4

**Statutes**

18 U.S.C. § 921 ...........................................................................................................5

18 U.S.C. § 922 ...........................................................................................................3

26 U.S.C. § 5842 ......................................................................................................3, 5

26 U.S.C. § 5845 ...................................................................................................3, 4, 5

**Legislative Materials**

H.R. Rep. No. 73-1780 (1934)......................................................................................4

**Executive Materials**

Factoring Criteria for Firearms With Attached "Stabilizing Braces," 88 Fed. Reg.
    6,478 (Jan. 31, 2023).................................................................................. *passim*

Factoring Criteria for Firearms With Attached "Stabilizing Braces," Notice of
    Proposed Rulemaking, 86 Fed. Reg. 30,826 (June 10, 2021).........................7, 11, 13

**Other Authorities**

11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    (3d ed. 1998) ...........................................................................................................20

**INTRODUCTION**

ATF's new Rule effects a seismic shift in the federal regulation of pistol stabilizing braces. Although ATF concedes that it has, for a decade, repeatedly held that braced pistols fall outside the National Firearms Act and heightened Gun Control Act regulation, the Rule says the opposite, for the first time subjecting millions of law-abiding Americans to onerous federal firearms controls that Congress targeted at prohibition-era gangsters. Indeed, the record shows that ATF's past position was instrumental in "creat[ing] a thriving market for these stabilizing braces." *See* Letter from the Honorable Mitch McConnell, et al. to the Honorable Merrick Garland, at 2 (June 24, 2021) ("Senate Letter"), Proposed Complaint ("Compl."), Ex. O, Dkt. # 18-15.

Notwithstanding the about-face, ATF defends its new Rule on the specious ground that the NFA and GCA have always unambiguously covered 99% of braced pistols. But the drastic consequences of ATF's sudden change should cause this Court to seriously "question whether [ATF's] current position represents the best view of the law." *Bittner v. United States*, 143 S. Ct. 713, 722 (2023). And because the Rule imposes severe criminal sanctions and carries enormous economic consequences, the agency can only be upheld if the statutes "unambiguously criminalize" possession of an unregistered pistol equipped with a stabilizing brace, *Cargill v. Garland*, 57 F.4th 447, 470 (5th Cir. 2023) (en banc), which they do not.

As CMMG has already shown, far from criminalizing that conduct, the statutes affirmatively exclude from regulation a weapon equipped with a stabilizing brace. At the very least, ATF's flip flop shows that the statutes are so ambiguous that lenity demands the Rule be set aside. Yet, ATF barely responds to these arguments. And what it does say reveals that the agency has not given serious thought to the legality of its Rule and Adjudications. ATF's brief:

- Ignores CMMG's statutory arguments almost entirely. ATF barely addresses that the agency's interpretation of the term "short-barreled rifle" would ignore textual distinctions in the two-pronged definition and render superfluous one of those prongs.

1

*Compare* Dkt. # 20 ("Mot.") at 3–7, *with* Dkt. # 42 ("Opp.") at 13–14.

- Ignores that ATF's interpretation would lead to absurd results and would run counter to the statute's structure, purpose, and history because it subjects to heightened regulation weapons made less concealable, more accurate, and less likely to be used in crime, unlike the gangster-style weapons Congress targeted in the 1930s. *Compare* Mot. 3–7, 9–11, *with* Opp. 13–14.

- Claims the agency will consider evidence that a brace effectively facilitates non-shouldered firing in evaluating design, contrary to express language in the Rule. *Compare* Mot. 7–9, *with* Opp. 12–13.

- Does not dispute that ATF looks to third-party intent—despite caselaw foreclosing such an approach—and instead mischaracterizes CMMG's argument on that issue. *Compare* Mot. 9, *with* Opp. 10–11.

- Denies lenity on the specious ground that the statute is unambiguous, contrary to ATF's decade of prior, inconsistent rulings, including two prior determinations that a gun affixed with an SB-Mini was not a "short-barreled rifle." *Compare* Mot. 11–14, *with* Opp. 14–17.

- Ignores entirely that the Rule's factors turn on the logical fallacy of comparing physical characteristics of braced weapons to rifles. *Compare* Mot. 17–19, *with* Opp. 21.

- Concedes that the agency entirely failed to consider all costs associated with the millions of braces sold since 2020. *Compare* Mot. 20–21, *with* Opp. 23.

- Asks this Court to suspend reality by accepting that ATF's adjudications are not "the culmination of ATF's decision-making process," Opp. 26, even though its extra-record, post hoc declaration states that ATF "determined that each such firearm [in the adjudications] was a short-barreled rifle," Dkt. # 42-1, ¶ 8 ("Ryan Decl.").

The agency's omissions, strawmen, and post hoc rationalizations are especially glaring in light of the administrative record. A shift of this magnitude generated significant pushback. ATF received over 237,000 comments during the course of the rulemaking—more than 217,000 of which advocated that ATF abandon or substantially change the proposed rule. ATF took two-and-a-half years to evaluate the numerous issues flagged by these commenters. And yet, ATF still has no satisfactory answer to these foundational—and ultimately dispositive—problems with the Rule.

This Court should enjoin ATF from enforcing its unlawful Rule and Adjudications.

**ARGUMENT**

**I.   CMMG IS LIKELY TO SUCCEED ON THE MERITS.**

**A.   ATF's Opposition Confirms The Rule Exceeds Its Statutory Authority.**

CMMG's motion detailed the reasons ATF's interpretation of the NFA and GCA contradict the text, structure, history, and purpose of the statutes.  Mot. 3–14.  Rather than address these points, ATF recycles non-responsive arguments from other cases.[1]

1.   <u>ATF Continues To Misinterpret "Short-Barreled Rifle."</u>

As CMMG explained, the statutory definitions of "short-barreled rifle" in the NFA (26 U.S.C. § 5845(a)(3), (a)(4)) and GCA (18 U.S.C. § 922(a)(4)) cannot encompass pistols with stabilizing braces.  Mot. 3–7.  ATF does not dispute that the Rule would cause absurd results under section 5842(a) or that its reading would render superfluous section 5845(a)(4).  Nor does ATF dispute that the Rule achieves a result that is ***the opposite*** of Congress's objective, by subjecting to NFA regulation pistols that are made ***less*** concealable, ***safer***, and ***more*** accurate through the attachment of stabilizing braces.

ATF accuses CMMG of "inject[ing] into the text words" "that aren't there."  Opp. 13 (citation omitted).  But it is ATF that ignores words that ***are there***.  In section 5845(a)(4), Congress chose the phrase "made from a rifle," thus contemplating aftermarket modifications to existing weapons.  *See* 26 U.S.C. § 5845(i) (defining "make" to exclude actions "by one qualified to engage in such business under" the NFA).  In section 5845(a)(3), by contrast, Congress did not use "made

---

[1] ATF also says "interpretive" rules are unreviewable.  Opp. 5–6.  Even if the Rule were interpretive, courts routinely set aside interpretive rules on pre-enforcement challenges.  *E.g.*, *Gonzales v. Oregon*, 546 U.S. 243, 254 (2006) (affirming entry of "a permanent injunction against the Interpretive Rule's enforcement"); *see also Cargill*, 57 F.4th at 455–56 (reviewing facial challenge to rule interpreting term in NFA and GCA); *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) (Kavanaugh, J.) ("interpretive rules may be subject to pre-enforcement judicial review"); *accord* Compl. ¶¶ 17–28 (detailed standing allegations).

3

from a rifle." "[D]ifferences in language like this convey differences in meaning." *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (citation omitted). In short, section 5845(a)(4) covers short-barreled rifles created by aftermarket modifications, while section 5845(a)(3) covers short-barreled rifles originally manufactured that way. By ignoring the NFA's text, ATF would construe section 5845(a)(3) to reach every "rifle" with a short barrel—even though that would render section 5845(a)(4) surplusage. *See* Opp. 13. Indeed, under ATF's reading, "the law's dichotomy between [these subdivisions] collapses," violating the "usual rule against" construing a provision "so broad[ly] that it assumes the same meaning as another." *Ysleta Del Sur Pueblo*, 142 S. Ct. at 1939 (cleaned up).

CMMG also thoroughly explained how ATF's decision to collapse these provisions would "frustrate the statutory scheme and its goal." *United States v. Am. Com. Lines, L.L.C.*, 759 F.3d 420, 425 (5th Cir. 2014); *see* Mot. 9–11. Indeed, Congress enacted these statutes to counter the proliferation of "sawed-off guns" favored by "gangster[s]," H.R. Rep. No. 73-1780 (1934), because such weapons are more "dangerous" and more "conceal[able]," *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) (cleaned up); *accord United States v. Marzzarella*, 614 F.3d 85, 95 (3rd Cir. 2010). Although ATF concedes that "Congress" "targeted" "uniquely dangerous and concealable weapons," Opp. 7, it never attempts to explain how the Rule's effort to target safer and less concealable pistols supposedly comports with Congress's goal. The Rule thus countermands the Supreme Court's instruction to "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose." *Abramski v. United States*, 573 U.S. 169, 179 (2014) (cleaned up).[2]

---

[2]  It is noteworthy that, unlike in the so-called "ghost gun" cases, not a single gun safety group has filed an amicus brief in support of ATF in any of the ongoing litigations involving the Rule.

Nor does ATF deny that the Rule's interpretation produces "absurd results" under section 5842(a).  *Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 506 (5th Cir. 2022) (citing *Gregory v. Mo. Pac. R.R. Co.*, 32 F.3d 160, 165 (5th Cir. 1994)).  That section requires "anyone making a firearm" to permanently engrave "a serial number."  26 U.S.C. § 5842(a); *see* Mot. 7.  If attaching a stabilizing brace to a pistol "made" a short-barreled rifle, the gunowner would have to **permanently** engrave his weapon upon **temporarily** attaching a brace to it.  Again, ATF ignores this point.

ATF asserts that the Rule has nothing to do with the definition of "firearm" or "short-barreled rifle," Opp. 13–14, but the record shows otherwise.  That claim is first belied by the Rule's preamble, which expressly states that the entire point of the Rule is to provide "factors that indicate [when] a weapon is in fact a *firearm* or *short-barreled rifle* under the relevant statutes."  88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule") (emphasis added).  It is also belied by the more than 60 summary adjudications ATF issued with the Rule, which provide that certain braced weapons "are short-barreled rifles."  *See* ATF, Common Weapon Platforms With Attached 'Stabilizing Brace' Designs that are Short-Barreled Rifles ("Platforms Adjudication"), Compl. Ex. C, Dkt. # 18-3; ATF, Commercially Available Firearms Equipped with a 'Stabilizing Brace' that are Short-Barreled Rifles ("Firearms Adjudication"), Compl. Ex. D, Dkt. # 18-4.  As these documents make clear, the agency's reading of the terms "firearm" and "short-barreled rifle" is fundamental to how the statutes and the Rule operate.

### 2.   ATF Continues To Misinterpret "Rifle."

*Designed.*  In evaluating whether a weapon is "designed" to be fired from the shoulder, *see* 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7), the Rule erroneously disregards all evidence that a weapon is designed for non-shoulder fire.  This construction not only contradicts a decade of decisionmaking by ATF—most of which, including the agency's 2021 Notice of Proposed

5

Rulemaking, focused on the function of the brace—but also contradicts Supreme Court precedent holding that the term "designed" does not encompass "items which are principally used for non[-regulated] purposes." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 501 (1982); *accord* Mot. 7–9.

ATF concedes the law but unsuccessfully contests the facts. According to ATF, CMMG embraces a "false premise" when it points out "that ATF excludes from consideration evidence that a stabilizing brace can be used to assist single-handed fir[ing]." Opp. 12 (citations and quotations omitted). But the preamble could not be clearer. It expressly states that "stabilizing support" for non-shoulder firing is "***not relevant*** to determine whether a firearm is designed, made, and intended to be fired from the shoulder." Rule, 88 Fed. Reg. at 6,510 (emphasis added). It further asserts that it is "incorrect to focus on whether a 'stabilizing brace' can be used, in some circumstances, to support two-handed, non-shouldered fire." *Id.* at 6,503.[3] In other words, ATF's brief "is contradicted by the [agency action] itself." *Innovator Enters., Inc. v. Jones*, 28 F. Supp. 3d 14, 27 (D.D.C. 2014).

The Rule's exclusion of this evidence is itself sufficient to doom ATF's statutory construction. No one can seriously dispute that evidence a weapon is designed for non-shoulder fire is ***relevant*** to the statutory inquiry. But under the Rule, ATF could determine that a pistol is a rifle based on a single publication suggesting that a brace is suitable for shouldering, while ignoring a hundred publications suggesting that the brace is highly effective at facilitating non-shoulder fire. *Compare* Rule, 88 Fed. Reg. at 6,519 (asserting that use of device for non-shoulder

---

[3] *See also id.* at 6,514 ("[F]ocusing on whether a 'stabilizing brace' can practically or effectively be used on a firearm for single-handed fire is not the correct inquiry."), 6,532 ("[S]tabilizing support is not a relevant objective design feature and therefore is not incorporated into this rule."), 6,557 (whether a "'stabilizing brace' makes firing a standard pistol more accurate or more enjoyable is irrelevant.").

fire is not "relevant"), *with id.* at 6,545–46 (asserting that use of device for shoulder fire is relevant).  The NFA and GCA plainly foreclose ATF's nonsensical approach.  *See Michigan v. EPA*, 576 U.S. 743, 752 (2015) (rejecting agency interpretation of statute that led to irrational outcome by entirely foreclosing consideration of relevant factor).

It is also directly contrary to years of agency decisionmaking with respect to braced pistols. ATF concedes that its prior analysis assessed whether a brace "could be used for single-handed fire."  *See* Dkt. # 33 ("Pl. Opp.") at 6 (emphasis omitted).  And indeed, ATF's prior classification decisions assessed whether the brace "allow[ed] shooters—particularly those with disabilities—to better support large handguns or pistols when firing one-handed."  ATF Letter 304296, at 4 (Dec. 22, 2015), Compl. Ex. K, Dkt. # 18-11; *accord* Rule, 88 Fed. Reg. at 6,502 (prior analyses placed "weight on whether the 'stabilizing brace' at issue could be used as a 'brace'").  As recently as its 2021 Notice, ATF's analysis still assessed "the ability to use the 'stabilizing brace' as an actual brace."  Factoring Criteria for Firearms with Attached "Stabilizing Braces," Notice of Proposed Rulemaking, 86 Fed. Reg. 30,826, 30,829 (June 10, 2021) ("Notice").  ATF's new approach completely reverses course.

*United States v. Thompson/Center Arms Co.*, 504 U.S. 505 (1992), shows the absurdity of this new approach.  There, a Supreme Court majority held that lenity prevented NFA regulation of a kit that would allow the recipient to make either a standard rifle, a short-barreled rifle, or a pistol. *See id.* at 517–18 (plurality); *id.* at 519 (Scalia, Thomas, JJ., concurring).  The lead opinion found the NFA ambiguous because the kit served a "useful purpose" other than the creation of a short-barreled rifle.  *Id.* at 512–13.  Stabilizing braces serve a "useful purpose" other than as a short-barreled rifle, too.  Namely, they secure the shooter's forearm to a pistol to stabilize non-shoulder firing.  *See* Compl. ¶ 62 & n.1 (citing patent).  As the *Thompson/Center* Court reasoned, this dual-

use functionality requires "apply[ing] the rule of lenity" to "resolve the ambiguity in [the regulated party]'s favor." 504 U.S. at 518; *accord Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994) (explaining "a certain degree of ambiguity necessarily surrounds" classifying "multiple-use items" (citations and quotations omitted)). ATF's approach plainly runs afoul of *Thompson/Center* because the agency refuses to even **consider** a "useful purpose" other than the creation of a short-barreled rifle.

Faced with this clear and contrary precedent, ATF mischaracterizes CMMG's argument as contending that the NFA "should be limited only to weapons designed and intended to fire *exclusively* from the shoulder." Opp. 12 (emphasis in original). ATF is wrong. CMMG contends that the NFA unambiguously does not regulate brace-affixed pistols or is at least grievously ambiguous as to them. Any ambiguity stems not from the fact that pistols equipped with stabilizing braces **could** be non-shoulder fired—something that is true of virtually any standard rifle—but rather from the fact that that, like the kit in *Thompson/Center*, attaching a stabilizing brace to a pistol has a bona fide useful purpose other than the creation of a short-barreled rifle.

For this reason, ATF's citation to *Sipes v. United States*, 321 F.2d 174 (8th Cir. 1963), and similar cases, misses the point. In *Sipes*, the Eighth Circuit held that a weapon with a shoulder stock designed to be fired from the shoulder was still a rifle even though it "*could be* fired elsewhere." *Sipes*, 321 F.2d at 178 (emphasis added). CMMG argues not that braced weapons "could be" non-shoulder fired, but that braces serve a bona-fide purpose other than designing a short-barreled rifle. The former does not create grievous ambiguity as to the statutory definition of "rifle," but the latter does.

*Intended.* The Rule also misinterprets "intended." Contrary to the Rule, courts have consistently held that third-party "advertising" and "opinion" have no "conceivable relevance to

the intent of the seller."  *Record Head Corp. v. Sachen*, 682 F.2d 672, 677 (7th Cir. 1982); *see also, e.g.*, *Tobacco Accessories & Novelty Craftsmen Merchs. Ass'n of La. v. Treen*, 681 F.2d 378, 385 (5th Cir. 1982); *United States v. Biro*, 143 F.3d 1421, 1428 (11th Cir. 1998); *Hoffman Estates*, 455 U.S. at 501 ("design" does not encompass "the intent of the retailer or customer").  Thus, the Rule contravenes the statute by considering such materials.  Mot. 15–16.

ATF ignores all this, instead faulting CMMG for supposedly "suggest[ing] that ATF determines a weapon's intended use by looking *solely* at third-party marketing materials" and that the agency should consider only "a manufacturer's description."  Opp. 10–11 (emphasis added).  But CMMG never claimed that.  CMMG only said ATF should not be considering third-party opinions because those opinions are irrelevant to the **manufacturer's** intent, as courts have held.

Indeed, the Supreme Court has made clear "that it is the likely use of customers generally, not any particular customer, that can render a multiple-use item" subject to regulation based on unlawful use.  *Posters 'N' Things*, 511 U.S. at 521 n.11; *see also Record Head*, 682 F.2d at 677.  Contrary to ATF's position, neither *Posters 'N' Things* nor any other case supports consideration of third-party opinion as evidence of manufacturer intent—especially isolated opinions cherry-picked to support a predetermined outcome.  *See* Mot. 19–20; *accord Posters 'N' Things*, 511 U.S. at 521 n.11 ("disagree[ing]" that "that a box of paper clips is converted into drug paraphernalia by the mere fact that a customer mentions to the seller that the paper clips will make excellent roach clips").

3.    ATF Continues To Wrongly Reject Lenity.

Although the text, structure, history, and purpose of the NFA and GCA all unambiguously prohibit ATF's statutory construction, at a minimum, the statutes are sufficiently ambiguous to trigger lenity with respect to brace-affixed pistols.  *Id.* at 11–14.

ATF's first response is to deny the law.  Confronted with the en banc Fifth Circuit's

application of lenity in *Cargill* when ATF similarly reversed course when interpreting the NFA and GCA, ATF suggests the Fifth Circuit's holding was merely dicta.  Opp. 16.  In fact, the court's lenity analysis was necessary to the result and was the only portion of the opinion to obtain a majority—commanding 12 votes from the 16-member court.  *Cargill*, 57 F.4th at 449 n.*.  ATF is simply wrong to the extent it suggests that "an agency's change in position" has no bearing on lenity.  Opp. 16.  It plainly does.  *Cf. Guedes v. ATF*, 140 S. Ct. 789, 790 (2020) (statement of Gorsuch, J.) (questioning how "ordinary citizens [can] be expected to keep up" when "it sometimes seems agencies change their statutory interpretations almost as often as elections change administrations").

Next, ATF again denies the facts.  Rather than admit it read the statutes differently for ten years—causing millions of Americans to acquire braced weapons without heightened regulation—the agency's brief claims that ATF has "always properly focused on the clear statutory command" and that any "shift is attributable to changing designs" of braces.  Opp. 15–16.

The record says otherwise.  Again, up to and including the Notice, ATF focused on brace function to analyze intent to shoulder.  And in the Rule's preamble, ATF expressly states that its "past inconsistencies and misapplication of the statutory definition" impose "an obligation to reconsider and rectify its past classifications."  Rule, 88 Fed. Reg. at 6,503; *see also id.* at 6,502 (acknowledging the Rule is "a change in position from some of ATF's previous classifications or positions"), 6503 ("ATF incorrectly read" "the GCA and NFA").  Indeed, if it were true that the Rule were merely the result of changed brace designs and a consistent application of the statute, as litigation counsel now claims, there would have been no need for ATF to expressly revoke all "prior classifications pertaining to 'stabilizing brace' devices, or firearms equipped with a

10

'stabilizing brace.'" *Id.* at 6502. But that is exactly what the Rule does.[4]

Furthermore, ATF did not merely revoke its prior adjudications but went on to expressly reclassify many weapons it had previously determined to be unregulated.[5] Perhaps most egregious, ATF has now classified an "AR-Type Firearm with SB-Mini Attached" as a "Short-barreled Rifle," *see* Platforms Adjudication at 8, despite saying exactly the opposite in the 2021 Notice, *see* Notice, 86 Fed. Reg. at 30,837. This undermines litigation counsel's claim that ATF's statutory analysis and focus on shouldering was settled "[b]y late 2020." Pl. Opp. 8. Indeed, the Opposition simply ignores ATF's change in position on the SB-Mini.

The bottom line is simple. The Rule fundamentally changes the way ATF reads the statutes. Before the Rule, ATF classified more than a dozen popular braces and brace-equipped products as not subject to heightened regulation under the NFA and the GCA. Rule, 88 Fed. Reg. 6,502 n.84. It told the public that these devices were "perfectly legal." ATF Letter 5000, at 1 (Mar. 21, 2017), Compl. Ex. N, Dkt. # 18-14. Its actions "created a thriving market for these stabilizing braces." Senate Letter at 2. Indeed, the public may have purchased as many as 40 million braces. *See* Mot. 10; *accord* Rule, 88 Fed. Reg. 6,560 (low estimate of 3 million). But after the Rule, 99% of all braced pistols currently in circulation will be subject to heightened regulation under the NFA and GCA. Mot. 2.

---

[4] Even ATF's briefing in this case is contradictory on the regulatory history. In its response to Plaintiffs' motion for preliminary injunction, ATF says that it began standardizing its analyses of brace-pistol combinations in 2017, and by 2020, its classifications "reflected a focused analysis of the weapon's objective design features." Pl. Opp. 7. But in response to CMMG's motion, ATF claims that before the Rule it "had not adopted a standardized analysis" and that the Rule "is a shift from a system of inconsistent *ad hoc* analysis to a consistent analytical framework." Opp. 15. ATF cannot recast its pre-Rule framework as a "focused analysis" of design features while previously telling the Court that the framework was an inconsistent, *ad hoc* process.

[5] *Compare* Rule, 88 Fed. Reg. at 6,502 n.84, *with* Firearms Adjudication at 33 (PSB), 15–18, 23 (Tailhook), *and* Platforms Adjudication at 11, 18, 43 (Shockwave Blade), 33 (Strike Industries MPX).

ATF's regulatory flip-flops show—at minimum—that the statute is grievously ambiguous as applied to weapons equipped with stabilizing braces.[6]  The Court should reject ATF's new claims of a "clear statute" after years of interpreting it in precisely the opposite way.  "[W]hen the government (or any litigant) speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing one."  *Bittner*, 143 S. Ct. at 722 n.5.[7]

## B.    ATF's Opposition Confirms The Rule Is Arbitrary And Capricious.

### 1.    ATF Confirms The Rule's Factors Are Holistically Arbitrary.

ATF does not deny that its discretionary, multi-factor test is like the one invalidated in *Innovator Enterprises*.  *See* Mot. 14–17.  It tries to distinguish that case by claiming that the arbitrary factors there were different from the arbitrary factors here.  But that overlooks the court's actual reasoning, which faulted ATF not only for the particular factors it advanced but also for its failure to articulate their relationship to each other.  *Innovator Enters.*, 28 F. Supp. 3d at 25–26.  The problem was that, by reserving to itself unbounded discretion, ATF's approach left "regulated parties, and reviewing courts[,] guessing" what conduct the standard purported to proscribe.  *Id.* at 25; *see also Record Head*, 682 F.2d at 677.

Here, ATF concedes its test is similarly "malleable" but asserts it has overcome this

---

[6]  In addition to lenity, CMMG showed (at Mot. 14) that constitutional avoidance leads to the same result because brace-equipped pistols are in "common use," *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2128, 2143 (2022).  ATF appears to suggest that CMMG cannot make that argument without separately alleging a constitutional violation, Opp. 17 n.6, but it offers no support for that erroneous claim, and Plaintiffs' motion focuses on the Second Amendment issue, *see* Dkt. # 15 at 16–18.

[7]  ATF claims that the Rule "better serves the aim of fair notice."  *See* Opp. 16–17.  Setting aside that the premise is false, *see infra* section I.B, where, as here, the Rule is inconsistent with the statute after applying the rule of lenity, its clarity in articulating an erroneous interpretation is irrelevant.  Similarly, ATF's claim that lenity does not apply in civil challenges to an agency rule is plainly not true.  *See, e.g.*, *Cargill*, 57 F.4th at 467–68 (rejecting this exact argument); *Thompson/Ctr.*, 504 U.S. at 517–18 (applying lenity "in a civil setting" because "the NFA has criminal applications").

problem by "issu[ing] interim guidance showing how dozens of weapons will be classified under this analysis." Opp. 19. But this "guidance" is in fact a series of summary adjudications that classify as short-barreled rifles more than 60 different braced weapons—many of which were previously unregulated—with nothing more than photographs and conclusory assertions. *See generally* Platforms Adjudication; Firearms Adjudication. Far from bringing clarity, ATF's unexplained adjudications ***confirm*** that the Rule is "a cloak for agency whim." *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004). Indeed, the cases cited by ATF stand for the proposition that multifactor tests in agency rules are "not '***necessarily*** arbitrary and capricious,'" but those cases also recognize that the test may be arbitrary where, as here, "application of" it reveals that the standard has "become 'a cloak for agency whim.'" *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 458 (5th Cir. 2021) (emphasis added) (quoting *PDK Lab'ys Inc. v. DEA*, 438 F.3d 1184, 1194 (D.C. Cir. 2006)).

### 2.   ATF Confirms The Rule's Factors Are Individually Arbitrary.

*Facial Comparisons To Rifles.* ATF confirms that it assesses length of pull, overall length, and weight by just comparing these metrics to rifles. Opp. 21. But, as *Innovator Enterprises* explained, simply having "characteristics in common with some category may not be very helpful in determining whether the object in question belongs in that category." 28 F. Supp. 3d at 25–26 ("Bud Light is not 'Single-Malt Scotch,' just because it is frequently served in a glass container, contains alcohol, and is available for purchase at a tavern."); *accord* Mot. 18–19. ATF ignores this logical deficiency entirely and instead parrots the Rule's conclusory assertion that these rote comparisons are probative. Opp. 21. ATF's response—like the Rule—also continues to ignore record evidence that its cited metrics are also consistent with ***pistols***, confirming that merely comparing these metrics is illogical. *Compare* Rule, 88 Fed. Reg. at 6,514–19 (listing example comparator weapons with weight ranges from 2 pounds to 10 pounds), *with* Notice, 86 Fed. Reg.

13

at 30,831 (explaining that "AR-type pistol[s]" weigh "approximately 5 to 7 pounds" and that a "traditional unloaded 1911-type pistols" weighs "just over 2 pounds.").

*Arbitrarily Imprecise.*   The Rule's preamble touts that most of its factors—including surface area, weight, length, and length of pull—are "quantifiable, easily measured metrics." Rule, 88 Fed. Reg. at 6,513.  But the Rule does not quantify these easily measured metrics.  For length, weight, and length of pull, ATF calls for parties to assess whether these characteristics are "consistent with" some unspecified subset of 12,000 different rifles.  *See id.* at 6,514 n.103, 6,575. And for surface area, ATF calls for parties to assess whether there is "surface area that allows the weapon to be fired from the shoulder."  *Id.* at 6,575.  ATF adopts these unbounded standards even though commenters stressed the need for precision on these quantifiable, easily measured factors. *See id.* at 6,513 (comments stating ATF provided "no measurable standards for many of the criteria"), 6,521–22 (comments criticizing ATF for giving "no metric for quantifying the surface area" thus "render[ing] any determination completely subjective").

ATF's open-ended factors are arbitrary and capricious for two reasons.  *See* Mot. 17–19. First, ATF "has never articulated the standards that guide[] its analysis."  *Tripoli Rocketry Ass'n, Inc. v. ATF*, 437 F.3d 75, 81 (D.C. Cir. 2006).  It is impossible for parties to assess whether their weapon's characteristics are "consistent with" an undefined subset of 12,000 different rifles from the National Firearms Collection.  ATF claims that this never-ending comparison is no problem because parties need only compare their weapons to its "variants."  Opp. 20–21.  But a "variant" is a weapon with a "similar" design, Rule, 88 Fed Reg. at 6,518 n.104, which invites an open-ended inquiry into what rifles are "similar" to a given braced pistol.  And even if a party manages to identify the weapons ATF will consider "similar," the agency has offered no guidance on what it means to be "consistent with" that design.  This "unbounded comparative analysis" is arbitrary

and capricious. *Tripoli Rocketry Ass'n*, 437 F.3d at 82.[8]

Second, ATF failed to explain **why** it chose to adopt these unbounded definitions in lieu of precise metrics. *Compare* Mot. 18 (explaining ATF "does not say why it will not" adopt more precise standards), *with* Opp. 20 (conceding agency must "adequately explain[]" why it adopted standard (citations and quotations omitted)). Despite several commenters calling for precise metrics so that parties could ascertain their weapon's legality—as well as the agency's own concession that these factors are "quantifiable" and "easily measured," Rule 88 Fed. Reg. at 6,513—ATF offered no reason for rejecting them. This omission betrays that ATF "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and failed "to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives," *Spirit Airlines, Inc. v. FAA*, 997 F.3d 1247, 1255 (D.C. Cir. 2021) (citation omitted).[9]

*Internal Inconsistencies.* The "community information" factor is internally inconsistent. The Rule contends that "the method in which a 'stabilizing brace' may be used in isolated circumstances or by a single individual" is not "relevant to examining whether a firearm is designed, made, and intended to be fired from the shoulder." Rule, 88 Fed. Reg. at 6,519. But elsewhere, ATF cites as probative two publications showing individuals who appear to be misusing stabilizing braces. *Id.* at 6,545–46. ATF offers no response to these disparate applications of this factor. Opp. 22–23. "Because [ATF's] decision is internally inconsistent, it is arbitrary and

---

[8] Cases that permitted undefined abstract regulatory standards like "national security threat," *Huawei*, 2 F.4th at 457 (citation omitted), are inapposite to this case, where "the agency has not claimed that it is impossible to be more precise," *Tripoli Rocketry Ass'n*, 437 F.3d at 81.

[9] ATF now claims that these factors "cannot be reasonably reduced to a universally applicable 'metric' or 'range.'" Opp. 21 n.8. Because this belated and conclusory explanation is "nowhere to be found in the" Rule, it is an "impermissible *post hoc* rationalization[] and thus [] not properly before" this Court. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1908–09 (2020).

capricious." *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1028 (D.C. Cir. 2018); *see Sierra Club v. EPA*, 939 F.3d 649, 664 & n.76 (5th Cir. 2019).

3.    <u>ATF Confirms The Cost-Benefit Analysis Is Arbitrary.</u>

ATF does not dispute that it failed to consider costs—and reliance interests—related to the last three years of brace sales.  Opp. 23.  This omission is stunning.  ATF itself noted that these were three of the six highest sales years.  *See* Rule, 88 Fed. Reg. at 6,560 (brace production "t[ook] off" in 2017).  CMMG's experience is in accord, having sold more braced pistols after 2020 than in the decade preceding it.  *See* Declaration of Chris Reinkemeyer ¶ 15 ("Reinkemeyer Decl."), Compl. Ex. G, Dkt. # 18-7.  Indeed, another company has sold *2.3 million* braces since 2020. *FRAC v. Garland*, No. 23-cv-24 (D. N.D. Feb. 9, 2023), Dkt. #1, ¶ 173.

ATF faults CMMG for "ignor[ing]" that "ATF calculated anticipated costs using an estimate of 7 million braces in circulation."  Opp. 23.  But, for one, the 7-million figure is ATF's self-described "high estimate," while the 3-million figure cited by CMMG is the agency's "primary" estimate.  Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis, at 62 (Jan. 2023), Compl. Ex. B, Dkt. # 18-2. And more fundamentally, ATF misses the point.  Its 7-million figure—like the 3-million figure—is one end of a range that ATF calculated by estimating the number of braces sold "*between the years 2013 to 2020*."  *Id.* at 18 (emphasis added).  That ATF estimated a range of braces to account for "uncertainty," Opp. 23, does not cure its failure to calculate that range in a way that considered any braces sold since 2020.  If ATF had estimated braces sold in the last three years, its primary estimate *and* its high estimate would be significantly higher.  Because ATF failed to consider the costs and reliance interests associated with millions of braces sold since 2020, its Rule is arbitrary.  *See Regents*, 140 S. Ct. at 1913–15; *Texas v. United States*, 40 F.4th 205, 226–28 (5th Cir. 2022) (upholding vacatur where agency failed to adequately consider relevant "costs" and "reliance interests").

16

ATF fares no better on benefits.  As CMMG explained, ATF made no effort to quantify benefits or analyze their relationship to the Rule's costs.  Mot. 21.  ATF now says the benefits were "immeasurable," Opp. 24 (citation omitted), but offers no support for that claim.  Further, ATF's Rule and standalone cost-benefit analysis make no such claim, rendering this argument an "impermissible *post hoc* rationalization[.]"  *Regents*, 140 S. Ct. at 1908–09.  Finally, CMMG pointed out that ATF did not explain the causal link between NFA classification and its purported unquantified benefits.  Mot. 21; *accord Texas*, 40 F.4th at 227 (failure to adequately assess data arbitrary and capricious).  But ATF offers no answer to this gaping deficiency.

### C.      ATF's Opposition Confirms Its Adjudications Are Unlawful And Reviewable.

ATF does not dispute the Adjudications violate the Administrative Procedure Act ("APA"), but wrongly claims they are unreviewable based entirely on a post hoc declaration filed with the brief that is—by definition—outside the agency record.  *See* Opp. 24–27; Ryan Decl.  Because the Adjudications are, in fact, reviewable, ATF effectively concedes that the agency (1) engaged in an impermissible "hybrid" proceeding that requires invalidation of the Rule and Adjudications, Mot. 22, (2) failed to reasonably explain its Adjudications, *id.* at 23, and (3) reversed course on two preliminary classifications of the SB-Mini, *id.* at 23–24.

The Adjudications are final agency action reviewable under the APA.  An agency action is "final" when (1) it "mark[s] the consummation of the agency's decisionmaking process," and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations and quotations omitted).  The Adjudications are both.

First, the Adjudications unambiguously state that the weapons they classify "*are* short-barreled rifles" and "*are* subject to the provisions of the NFA."  Platforms Adjudication at 1; Firearms Adjudication at 1 (emphases added).  Nothing about that is "tentative or interlocutory."

*Bennett*, 520 U.S. at 178.  And contrary to counsel's claim here that the decisions "merely forecast ATF's" position, Opp. 25, the agency's declarant swears ATF has already "determined that each such firearm was a short-barreled rifle."  Ryan Decl. ¶ 8.  Indeed, ATF's counsel previously told this Court that the Adjudications list weapons "that ATF *has determined are short-barreled rifles* under the NFA and GCA."  Pl. Opp. 11 n.5 (emphasis added).  That ATF will later "explain[] its reasoning and analysis" does not change the fact that it has already issued "each classification decision."  Ryan Decl. ¶ 8.  In fact, that concession dooms the Adjudications because the agency is required to offer its "stated rationale ***at the time of its decision***."  *Texas v. EPA*, 829 F.3d 405, 425 (5th Cir. 2016) (emphasis added).

Second, the Rule states that the Adjudications provide a list of platforms and firearms with stabilizing braces "that are short-barreled rifles."  Rule, 88 Fed. Reg. at 6,514.  It then says: "For such weapons, action such as registration in the [National Firearms Registration and Transfer Record] *will need to be taken* as discussed in section V.B of this preamble," *id.*, which provides options for "[p]ersons in possession of short-barreled rifles equipped with a 'stabilizing brace' device," *id.* at 6,570 (emphasis added); *accord* Platforms Adjudication at 1 (classified weapons "are subject to the provisions of the NFA"); Firearms Adjudication at 1 (same).[10]  Because ATF's Adjudications require parties in possession of the newly classified weapons to "compl[y] with" "prescribed conditions" of the NFA—under threat of criminal penalties—they "ha[ve] direct and appreciable legal consequences."  *Bennett*, 520 U.S. at 178; *accord Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (action reviewable where it "appears on its face to be binding" even where

---

[10]  That the Adjudications are "representative of how ATF will apply the" Rule, Opp. 25 (citations and quotations omitted), is not inconsistent with—and in fact confirms—the fact that the Adjudications applied the Rule.

agency contends it is "guidance").[11]

## II.   THE REMAINING FACTORS FAVOR PRELIMINARY RELIEF.

CMMG has established irreparable harm.  Mot. 24–25.  ATF does not dispute that CMMG

has incurred nearly $800,000 in costs from cancelled and returned orders, has had to let go 7% of

its employees, has incurred unrecoverable compliance costs, and faces a real risk that it may go

out of business.  *Id.* at 24; Reinkemeyer Decl. ¶¶ 11–17.  ATF instead suggests that CMMG has

made a "voluntary decision" to forego "85% of their revenues."  Opp. 28.

The $800,000 in cancelled and returned orders, however, belies any notion that the harm

to CMMG is "voluntary."  Indeed, CMMG has stopped selling braces because the Rule and

Adjudications impose ***criminal liability*** for activities related to manufacturing, transferring, and

selling braced weapons—including CMMG's "model Banshee"—without jumping through

onerous regulatory requirements.  *See* Compl. ¶¶ 29–32, 40–59.  That cessation is a direct result

of the agency's actions—not a "voluntary" choice.  *See, e.g.*, *VanDerStok v. Garland*, ___

F.Supp.3d ___, 2022 WL 4009048, at *8 (N.D. Tex. Sept. 2, 2022) (No. 4:22-cv-00691-O)

(finding irreparable injury where, "when the Final [ATF] Rule took effect, Tactical Machining

ceased sales of various parts" to avoid potential liability for itself and its customers).  These

crushing, unrecoverable economic injuries plainly constitute irreparable harm.

Finally, the equities favor CMMG.  Mot. 25.  ATF does not contest that it has no interest

---

[11] ATF is also wrong to contest CMMG's standing.  The Adjudications expressly classified a CMMG product—the "CMMG, model Banshee with SBA3 attached"—as a "Short-barreled Rifle."  Firearms Adjudication at 6; *see* Mot. 2 (explaining that Adjudications classified "one of CMMG's products by name"); *contra* Opp. 27 ("CMMG fails to identify even one configuration covered by the guidance that CMMG manufactures or sells.").  The Adjudications thus make CMMG's products harder to sell, causing injury-in-fact that would be redressed through injunctive relief.  *See* Compl. ¶¶ 17–28 (detailed standing allegations); *accord* Reinkemeyer Decl. ¶¶ 11–17; Supplemental Declaration of Chris Reinkemeyer ¶¶ 9–10, Reply Ex. A.

in enforcing unlawful agency action and that millions of Americans who purchased braces in reliance on ATF's previous position will now have to comply with onerous federal regulations. Nor does it point to any new safety threats that did not exist during the ten years ATF declined to regulate brace-affixed pistols. And while ATF suggests that "[l]eaving the Rule in place" is the status quo, Opp. 29, the purpose of the preliminary injunction is to preserve the pre-action status quo. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948 (3d ed. 1998) (status quo is "the last peaceable uncontested status existing between the parties before the dispute developed"). Indeed, another court in this District recently recognized that the pre-action status quo is the relevant benchmark, holding that the balance of equities favored plaintiffs where "Defendants' enforcement of the rule strips Plaintiffs of freedoms they lawfully enjoyed until just last week." *VanDerStok*, 2022 WL 4009048, at *10. Here, that requires protecting millions of Americans by preliminarily enjoining ATF's unlawful action.

## CONCLUSION

Because CMMG has established that it will succeed on the merits and that the other three factors favor preliminary relief, this Court should preliminarily enjoin ATF from enforcing the Rule and the Adjudications.

March 20, 2023

/s/ Stephen J. Obermeier
Stephen J. Obermeier (*pro hac vice*)
Thomas M. Johnson, Jr. (*pro hac vice*)
Michael D. Faucette (*pro hac vice*)
Jeremy J. Broggi (*pro hac vice*)
Boyd Garriott (*pro hac vice*)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel: 202.719.7000
Fax: 202.719.7049
SObermeier@wiley.law
TMJohnson@wiley.law
MFaucette@wiley.law
JBroggi@wiley.law
BGarriott@wiley.law

Dusty J. Stockard
Texas Bar No.: 24028014
**STOCKARD, JOHNSTON, BROWN
NETARDUS & DOYLE, P.C.**
1030 N. Western
Amarillo, TX 79106
Tel: 806.372.2202
Fax: 806.379.7799
DStockard@sjblawfirm.com

*Counsel for CMMG, Inc.*