IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| DARREN A. BRITTO, *et al.*, | |
| Plaintiffs, | |
| v. | 2:23-CV-019-Z |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Preliminary Injunction ("Motion") (ECF No. 14), filed on February 7, 2023, against the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Having considered the Motion, briefing, and relevant law,[1] the Court **GRANTS** the Motion.

### BACKGROUND

The National Firearms Act of 1934 ("NFA"), 26 U.S.C. Sections 5801–5872, regulates the manufacture, possession, and transfer of a limited group of "firearms" that "Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes." *United States v. Jennings*, 195 F.3d 795, 799 (5th Cir. 1999). "[T]he primary reason that unregistered possession of these particular weapons is a crime is the virtual inevitability that such possession will result in violence." *Id.*; *see also United States v. Freed*, 401 U.S. 601, 609 (1971) (NFA applies to "highly dangerous offensive weapons"); *Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1412 (11th Cir. 1985) (NFA applies to weapons that are "deemed

---

[1] This case was stayed, pending the resolution of *Mock v. Garland*, No. 4:23-CV-00095-O, 2023 WL 6457920 (N.D. Tex. Oct. 2, 2023). After receiving binding guidance from the United States Court of Appeals for the Fifth Circuit (namely, that the same Rule challenged here failed the logical outgrowth test), *id.* at *4, Judge O'Connor held that "the braced pistols subject to enforcement of [the Rule] are in common use today," *id.* at *9, and enjoined enforcement of the Rule against those plaintiffs, *id.* at 18.

particularly inimical to public safety"). Included within NFA's definition of "firearms" are "rifles" with barrels less than 16 inches — also known as "short-barreled rifle[s]" ("SBRs") as that term is defined by the Gun Control Act of 1968. *See* 26 U.S.C. § 5845(a)(3); 18 U.S.C. § 921(a)(8).

Under the NFA, the term "rifle" means:

> a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

26 U.S.C. § 5845(c). Hence, a weapon that is a "rifle" per this definition with a barrel less than 16 inches constitutes an SBR — *i.e.*, a "firearm" under the NFA. Like all "firearms," SBRs must be identified on a central registry, along with the identification and address of the person entitled to possess the rifle. 26 U.S.C. § 5841. SBR owners must also pay a transfer tax of $200. 26 U.S.C. § 5811. A person who violates these requirements is subject to a $10,000 fine and up to 10 years of imprisonment. 26 U.S.C. § 5871.

Absent from the NFA's definition of "firearms" are any references to handguns or pistols, except that "a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell" falls within the NFA's definition of "firearm." 26 U.S.C. § 5845(e). Thus, common handgun and pistol owners are ordinarily not subject to the NFA.

Some larger handguns — due to their weight and recoil — may be difficult to fire with one hand, especially for individuals with limited strength or mobility. For these weapons, a "stabilizing brace" may be attached to provide support and improve accuracy. ECF No. 15 at 9. From 2012 to 2018, ATF issued several classifications of stabilizing braces concluding that a brace does not "redesign" a handgun to be fired from the shoulder. 88 Fed. Reg. at 6478. In other words, such weapon configurations were not considered SBRs. But then ATF became aware that newer braces

"began to include characteristics common to shoulder stocks." ECF No. 33 at 19. And the evidence showed that owners used them as such. *Id.*

After the March 2021 mass shooting in Boulder, Colorado — where the shooter was armed with a weapon of this sort — ATF revisited the issue. *Id.* at 21.[2] On January 31, 2023, ATF published a new rule ("Rule") that clarified the statutory phrase "designed, redesigned, made or remade, and intended to be fired from the shoulder." *See id.* at 22; 88 Fed. Reg. at 6478. Under the Rule, this phrase now includes weapons equipped with a stabilizing brace that provides "surface area" allowing the weapon to be fired from the shoulder, "provided that other factors indicate that the weapon is designed, made, and intended to be fired from the shoulder." *Id.* These factors include measurements of the weapon's "weight or length" or "length of pull," the manufacturer's "direct or indirect marketing," "the likely use of the weapon in the general community," and whether the weapon "is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed." 88 Fed. Reg. at 6480. Because "a majority" of these weapons will be reclassified as SBRs, *id.*, anyone in possession of a weapon reclassified by ATF as an SBR faces criminal penalties unless they comply with the NFA within 120 days of the Rule's publication date. *Id.* at 6553.

Plaintiffs are three decorated Marine veterans who possess what are likely to be SBRs under the Rule. ECF No. 15 at 14–15. They claim the Rule: (1) violates the Second Amendment; (2) violates separation of powers and nondelegation principles; (3) conflicts with the NFA's definition of "rifle"; (4) is arbitrary and capricious under the Administrative Procedure Act ("APA"); and (5) is void for vagueness. ECF No. 15 at 16–28. For those reasons, Plaintiffs seek an injunction prohibiting ATF from enforcing the Rule. *Id.* at 31.

---

[2] Of the 237,000 comments received, fewer than 20,000 were supportive of the proposed rule. 88 Fed. Reg. at 6497.

**LEGAL STANDARD**

A court may issue a preliminary injunction when a movant satisfies the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) the threatened injury outweighs any harm that will result if the injunction is granted; and (4) the grant of an injunction is in the public interest. *See Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

**ANALYSIS**

**A. Plaintiffs Have a Substantial Likelihood of Prevailing on the Merits**

"To satisfy the first element of likelihood of success on the merits," Plaintiffs "must present a prima facie case but need not show that [they are] certain to win." *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011) (internal marks omitted). Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

*1. Recent Precedent*

This Court does not begin with a blank slate. As the parties have acknowledged, the recent case of *Mock v. Garland* provides substantial guidance. No. 4:23-CV-00095-O, 2023 WL 6457920 (N.D. Tex. Oct. 2, 2023). There, a firearms advocacy group, individual braced pistol owners, and a firearms accessories manufacturer and retailer brought an action under the APA challenging the same Rule before the Court now. *Id.* at *1. On appeal, the Fifth Circuit held that the Rule "was not a logical outgrowth of the Proposed Rule," that the "monumental error was prejudicial," and that it "must be set aside as unlawful." *Mock v. Garland*, 75 F.4th 563, 583–86 (5th Cir. 2023) (citing

4

5 U.S.C. § 553(b)-(c) (providing that a final rule adopted by an agency must be a logical outgrowth of its concomitant proposed rule); *id.* § 706(2)(D) (directing reviewing courts to "hold unlawful and set aside agency [rules]" found to be "without observance of procedure required by law")).

The Fifth Circuit then remanded the case back to the district court to assess the remaining preliminary injunction factors and rule — in light of the circuit panel's decision — on the plaintiffs' motion. *See id.* at 586–88. In doing so, the Fifth Circuit placed "no limitation on the matters that [the court] may address on remand" and gave "no indication of what decisions it should reach, regarding a preliminary injunction or any other matter." *Id.* at 588.[3]

On remand, the district court found that the plaintiffs had demonstrated a likelihood of success on their challenge because — in addition to the circuit panel's holding that the Rule failed the logical outgrowth test — "the braced pistols subject to enforcement of the Final Rule are in common use today" and "possession and use of brace pistols is therefore within the ambit of Second Amendment protection." *Garland*, 2023 WL 6457920, at *9–10; *see also New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022) ("[T]he Second Amendment protects the possession and use of weapons that are in common use at the time.") (internal marks omitted); *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).

Given the Fifth Circuit's holding, this Court recognizes that the Rule "was not a logical outgrowth of the Proposed Rule" and "must be set aside as unlawful." *Mock v. Garland*, 75 F.4th 563, 583–86 (5th Cir. 2023). That holding alone establishes that Plaintiffs "have demonstrated, *a fortiori*, an actual success on the merits of their APA challenge to the . . . Rule." *Garland*, 2023 WL 6457920, at *6.

---

[3] Judge Willett joined the Fifth Circuit's opinion "in full measure," but wrote separately to suggest "that the Final Rule would likely fail constitutional muster even if it were a logical outgrowth of the worksheet idea that preceded it." *Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willet, J., concurring). In his view, protected Second Amendment conduct "likely includes making common, safety-improving modifications to otherwise lawfully bearable arms." *Id.*

"It goes without saying that constitutional questions should be avoided if there are independent 'ground[s] upon which the case may be disposed of.'" *Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 235 (5th Cir. 2012) (quoting *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 483, 80 L. Ed. 688 (1936)). And as Judge Tipton noted in a similar case, "it would be improper for this Court to now evaluate constitutional issues" given that "the Fifth Circuit has already decided that the Final Rule violates the APA." *Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 6:23-CV-00013, 2023 WL 7116844, at *9 (S.D. Tex. Oct. 27, 2023).

"Further, the Supreme Court has encouraged lower courts to avoid expending 'scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Hence, in light of the Fifth Circuit's holding and the fact that "[a] finding that any of Plaintiffs' additional claims are likely to succeed on the merits would not affect the Court's analysis regarding whether to issue a preliminary injunction," the Court moves to the next factor. *Texas*, 2023 WL 7116844, at *9.

### B. Plaintiffs Will Suffer Irreparable Harm if the Motion Is Denied

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948.1 (3d ed.). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Irreparable harm must be "concrete" and not "de minimis." *Garland*, 2023 WL 6457920, at *6.

As discussed *supra*, Plaintiffs are three decorated Marine veterans who possess what are likely to be SBRs under the Rule. ECF No. 15 at 14–15. Plaintiff Darren A. Britto is one such

veteran who owns a pistol with a stabilizing brace. *Id.* at 14. His pistol, which has a barrel less than 16 inches, was not designed, made, or intended to be fired from the shoulder because Mr. Britto has a combat-related injury to his right shoulder. *Id.* Mr. Britto uses this firearm for personal defense, competitive sport shooting, recreation with his family, and as part of his employment as a firearms instructor certified by the NRA and the State of Texas. *Id.*

Plaintiff Shawn M. Kroll is another. *Id.* He owns a pistol with a 10.5" barrel and a stabilizing brace, and he uses the brace for recreational target shooting, hunting, and personal defense. *Id.* The firearm is not designed to be fired from the shoulder, so Mr. Kroll uses a stabilizing brace "because it makes the firearm . . . safer." *Id.*

Lastly, Plaintiff Gabriel A. Tauscher deployed overseas in support of the Global War on Terrorism. *Id.* Tragically, Mr. Tauscher was ambushed in 2021 and shot 15 times. *Id.* He spent 85 days in the hospital, enduring multiple surgeries and requiring 20 pints of blood. *Id.* Because his left arm is partially disabled, Mr. Tauscher uses a stabilizing brace to help him fire. *Id.* at 14–15. He uses his firearm for personal protection and recreation. *Id.*

"Under the Final Rule, compliance will almost always come at a cost." *Texas*, 2023 WL 7116844, at *10. "When the Fifth Circuit sent *Mock* back to the district court, the court evaluated the irreparable harm, if any, that several private plaintiffs in the case would suffer." *Id.* "Because the Mock plaintiffs owned firearms and stabilizing braces that the Final Rule would classify as an SBR, the plaintiffs had 'no trouble establishing a substantial threat of irreparable harm in the form of nonrecoverable compliance costs.'" *Id.* (quoting *Garland*, 2023 WL 6457920, at *7). The same is true here.

The ATF "gave affected gun owners until May 31, 2023, to register their stabilizing braces." *Id.* at 11. That deadline has passed. Accordingly, Plaintiffs must do one of four things to

comply with the Rule: "(1) permanently modify their weapon to remove it from the scope of the NFA, (2) dispose of or alter their stabilizing brace so that it can never be reattached, (3) turn over their weapon to the ATF, or (4) destroy their weapon completely." *Id.* Each option is costly.

Moreover, "even if a gun owner had registered their weapon with the ATF prior to the May 31 deadline, the weapon must still be marked, to reflect its new classification." *Id.* (internal marks omitted); *see also* 88 Fed. Reg. at 6570. "The ATF estimates that each engraving, or marking, would cost gun owners anywhere from $30 to $65." *Texas*, 2023 WL 7116844, at *11. And as the Fifth Circuit noted, "[t]here is no given process for undoing or recouping those compliance costs." *Garland*, 2023 WL 6457920, at n.29. Hence, Plaintiffs would incur costs under the Rule "regardless of their chosen method of compliance." *Texas*, 2023 WL 7116844, at *11. "And because sovereign immunity would prevent them from recouping their costs from the ATF, [Plaintiffs] would be irreparably harmed absent injunctive relief." *Id.* (internal citations omitted).

### C. The Public Interest Supports Injunctive Relief

The third and fourth factors — assessing the harm to the opposing party and weighing the public interest — "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[T]here is generally no public interest in the perpetuation of unlawful agency action." *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (internal marks omitted).

For similar reasons, this factor supports injunctive relief. As explained in *Garland*, "[t]he controlling law of this case is that the Government Defendants' promulgation of the Final Rule 'fails the logical-outgrowth test and violates the APA' and 'therefore must be set aside as unlawful' under the APA." 2023 WL 6457920, at *17 (quoting *Garland*, 75 F.4th at 578, 583–86). "It follows, then, that there is no injury that the Government Defendants or public at-large could possibly suffer from if enforcement of the Final Rule were enjoined." *Id.*; *see also Open*

*Communities All. v. Carson*, 286 F.Supp.3d 148, 179 (D.D.C. 2017). Additionally, ATF admits the 10-year cost of the Rule is over one billion dollars. 88 Fed. Reg. at 6565. And because of the Rule, certain manufacturers that obtain most of their sales from stabilizing braces risk having to close their doors for good. *See* ECF No. 17 at 5–6.

The Court is not insensitive to ATF's concerns over gun-industry gamesmanship and attempts to circumvent the NFA's restrictions on SBRs. However, "the government may not simply posit that the regulation promotes an important interest" to justify its regulation. *Bruen*, 142 S. Ct. at 2126. Of course, some form of protest can be expected when constitutional rights are allegedly infringed. The passage of time and the development of new technology can also reveal latent ambiguities in a statute. *See Matter of Erickson*, 815 F.2d 1090, 1092 (7th Cir. 1987) (Easterbrook, J.) ("[T]echnological change may dramatically enlarge the [statute] without legislative consideration.").

Likewise, the Court is certainly sympathetic to ATF's concerns over public safety in the wake of tragic mass shootings. The Rule "embodies salutary policy goals meant to protect vulnerable people in our society." *Rahimi*, 61 F.4th at 461. But public safety concerns must be addressed in ways that are lawful. This Rule is not.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion and **STAYS** the Rule in its entirety. *See* 5 U.S.C § 705; *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016).

**SO ORDERED.**

November 8, 2023

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE